Judge Underwood
delivered the Opinion of the Court.
Colonel Knox, as patentee, owned two tracts of land in the state of Ohio — one of two thousand, the other of seven hundred acres. He was entitled to one thousand six hundred twenty eight acres and two thirds, in land warrants, as a balance due him for bis services in the revolutionary army. He employed Taylor, the plaintiff in error, to take care of the two tracts, to pay taxes on them, and on other lands which he owned in Ohio. *392 And likewise, to obtain land warrants for the- balance due him, as an officer of the Virginia continental line. He at length gave Taylor authority to sell his lands in Ohio. Under the powers thus conferred, Taylor obtained two land warrants, one for eight hundred eighty eight acres and two thirds, the other for seven hundred and forty acres, and sold the whole or greater part of said two tracts of land.
Points to be decided.
Allegations, denials and conflicting statements of the parties.
In 1821, Knox filed his bill against Taylor, praying for an account of all his transactions as agent, and claiming the moiety of the two warrants, or the half of the proceeds of the sale of the land which had been secured in virtue of said warrants.
Taylor, in his answer, claimed the whole of the warrants, or land secured by them; and exhibited his accounts of the sales of the two tracts aforesaid, from which it appears, that he owes a balance to the representatives of Knox.
There are but two questions of consequence presented by the record.
First. Is Taylor entitled to the whole of the two land warrants ?
Second. Is Taylor chargeable with interest on the funds of Knox in his hands ? and if he is, from what time should interest run ?
The circuit court settled both these, questions most unfavorably to Taylor, and he prosecutes a writ of error.
The parties differ very widely in their statements, and much is left to be determined by inference from facts, there being very little direct evidence bearing upon the controversy.
As to the first point — Knox alleges, that he assigned the land warrants to Taylor, to hold a moiety for his own use, and the other moiety in trust for the use of the assignor. Taylor denies this, and says he was entitled to a moiety of the warrants for his services in procuring them, and that he purchased the other moiety at thirty three and one third cents per acre, and paid for them in money advanced to discharge taxes.
Knox moreover contends, that the transfer and assignment of the whole of the warrants ought not to *393 'Stand, because Taylor perpetrated a fraud, in concealing, at the date of the transfer, the facts, that the warrant for eight hundred eighty, eight acres and two thirds, had been surveyed before that time, and that Taylor had previously sold’ a portion of the land at two dollars per acre. Taylor obviates this, by stating that the contract had been verbally made some time before it was reduced to writing, and that Knox was apprized of the survey on the warrant for eight hundred eighty eight and two thirds acres, before the assignment was executed, although nothing was said about it at the time the assignment took place.
Certain facts, not controverted.
Land warrants being transfon-r ed without reservation in the assignment, and no proof that a trust was intended — none can be presumed. .
The following facts are indisputable, and upon them the right of Knox to an interest in the warrants must depend, if he has any.
On the 28th of March, 1807, Knox ássigned to Taylor half the warrant for eight. hundred eighty pight acres and two thirds. On the 6th of January, 1833, he assigned the other half. On the 13th of January, 1818, he assigned the whole of the warrant for seven hundred and forty acres.
Tiie entry qn the warrant for -eight hundred eighty eighfand two thirds acres was made on the 16th of May, 1808. A survey was executed thereon, on the 11th of June, 1808; but this survey was not examined and recorded in the principal surveyor’s office, until the -3d of July, 1820.
The assignment of each warrant purports to be for value received, and is without any condition upon the face. The assignment of the half of the warrant for eight hundred eighty eight and two thirds acres, dated 28th of March, 1807, is for an equal, moiety of the warrant “with an equal interest in any survey that shall or may bq made on the said warrant, and-requests that a patent, or patents, may issue in the-joint names of myself and said Taylor.” TJie assignment of the other half is in these words : “ I do assign over to James Taylor, within mentioned, the other half of the within mentioned warrant, and request that a patent may issue to him, his heirs or assigns, for the whole, amount of the said Warrant, for value received.” To which there are two subscribing *394 witnesses. The deposition of neither has been taken. It cannot be inferred from the aforesaid assignments, whether Knox had or had not a knowledge of the execution of the survey, in virtue of the warrant, at the time he made the last assignment ; but it is obvious, that the language used was designed to secure titles to Taylor upon the surveys which might be or had been made’. The contracts, as evidenced by the writings, shew that there was no trust for Knox’s benefit, reserved in any part of the warrants. There is no evidence aliunde to shew an intention to create such a trust. Consequently, there is no ground on which to regard Taylor as trustee for Knox, in respect to either of the warrants, or any part of them.
Allegation of an answer, that the transfer of land warrants was by verbal agreement, anterior to the assignment endorsed, must, be sup-portedby proof, or the date of the assignment must be taken as the true date of the transfer.
It remains to enquire into the alleged fraud ; and upon this ground it seems the circuit court based its decree.
If, as Taylor states, he made a verbal contract for Knox’s half of the warrant of eight hundred and eighty eight acres and two thirds, in the latter part of 1801, or early in the vear 1808, which was afterwards consummated by the assignment dated 6th of January 1813, there is no foundation for the imputed fraud. But of the existence of any such verbal contract there is no proof, other than the statement of Taylor. It is true, at that time Knox was indebted to Taylor, for advances in paying taxes, and it is probable that he might have discharged the debt by selling the warrant, as Taylor avers that lie did. This however, is mere conjecture, and will not authorize us to conclude, that the assignment of half the warrant, in 1813, was the consummation of a previous verbal contract. In determining, therefore, whether a fraud was practised bv Tavlor, the circumstances existing on the 6th of January, 1813, must be considered, and the parties must be looked upon as contracting on that day. Tavlor admits that his agent, Eubank, in 1810 and 1812, sold one or two small tracts out of the survey of eight hundred and eighty eight acres and two thirds, for about two dollars per acre, in property, upon long credits ; but lie does riot admit or deny, that he was informed of those sales before the assignment of *395 Knox’s half of the warrant in 1813. He is silent as to the time when he was first informed of these sales. He says they were made in his absence from the state. The charge in the bill is, “ that Taylor and Lytle claiming under him had, prior to the 5rear 1813, sold out parts of said land. ” Taylor admits the charge — he acting by agent; and does not deny, but that he had knowledge. of his agent’s sales before he procured the assignment of the 6th of January 1813. The inference is, judging from the usual course of business, and presuming that Eubank, as a faithful agent, notified his princi. pal, within a reasonable time, of the sales made, that Taylor was apprized at the time of the assignment, of the sales made by Eubank at two dollars per acre, payable in property, other than money, on long credits. It is clear, that Knox parted with his right to the warrant only. It had been placed in Taylor’s hands and subject to his control since the assignment of half in 1807. Had Knox known that the warrant had been located. and surveyed upon land worth two dollars per acre, in property on a long credit, he might not have been willing to take thirty three and one third cents per acre. Although Taylor denies that he had any knowledge of the execution of the survey upon the warrant; yet from the fact of his selling the land by his agent Eu-bank, the deduction is fair that he knew Knox’s warrant had secured title to the particular land sold; and if by entry in the office of the principal surveyor not yet. surveyed, it was the same thing so far as the interests of Knox were concerned, as if the survey had been made, and he knew it. The question is, was he bound to counnuni? cate to Knox his knowledge that a part of the land had been sold at two dollars per acre, in trade, upon long credits? We think, fair dealing required that he should have done it, and as he did not, that in equity he ought to account to Knox’s executors for half the cash value of the land, with interest thereon from the times the several portions thereof were.sold to purchasers, deducting therefrom half the expenses for locating, paying tax *396 es &c. which were incurred by Taylor in securing the land. If Taylor had been an entire stranger to the' whole transaction, and if he had not been the agent for Knox, and then had taken- an assignment of Knox’s half of the warrant, we will not say that lie could not hold-the land, although Knox might have made the assignment being ignorant- that any land had been secured by entry and survey. Nor is it necessary now to decide that a- stranger to all the transactions,- having had no' connecton with them-, but knowing that the warrant had been entered- and surveyed, and applying to Knox to purchase, would have been bound in-'equity to com-munioate all his knowledge to Knox ; or be compelled to give up the contract he might enter into, upon the ground that he was better informed than Knox, in regard to the facts. The relation subsisting between Taylor and Knox placed Taylor qpon a different footing from that which a mere stranger would occupy.
That a party Is informed of a saleoflandmrde by his agent is a justinfeience; and it is to he presumed, that he knew, also, how the land was acquired.
It is the duty oí an agent to inform his .principal of his proceedings. — One reeerves land warrants,a moiety of v hieh is assigned to him, to locate them on shares, and sell the land: having done so, he should .inform the party who furnished the warrants ; and if, without giving that information, he buys the other half of the warrants for less than the value of the land, he shall, nevertheless, account for its foil value at the time he sold it.
Query, whether a stranger would be bound to impart hisr ' knowledge before making the purchase.-
If the vendee of land loses it, he may recover of his vendor, the nominal amount of the'consideration, altho’ it was paid in property at an exorbitant price— a rule which might work injustice ; but it has been so decided -and me a may make their contracts accord ingly.
This rule does not apply to an agent who by-taking property in. payment, on his own ae-count, sells the land.of his principal at a high price : he shall account only for the fair cash value of the tan,d, with interest from the time of the sal$.
We think tiie circuit court erred as to the measure of Tax lor’s liability for the half of the warrant for eight hundred eighty eight- and two thirds acres. That court took two dollars per acre as the criterion-, because Taylor sold the land for that in trade. Wé know it has been decided by this court, that if a vendee loses land which he lias paid for, in trade, he shall recover of the warranting vendor, not the cash value of the property paid, but .the estimated price of the property.. This rule, if invariably applied, may work great injustice. Á- is willing-to give B a horse for a hundred acres of land. B is willing to take the horse for the land, and lets A price the horse at a hundred, or a thousand dollars, provided the land is estimated as high. Such a‘bargain is in truth an exchange of one thing for another, and in which the estimated price is a matter of no importance. In case the title fails, A should only recover the true value of his horse, or of the land lost ;■ and there would be no propriety in estopping the parties by the agreed price, if it had not been so decided.. Now parties may fix prices with a view to the decision. If that is done, the rule is fair ; but where that is not done, the rule may operate very unjustly. This rule, however, does not apply be *397 tween Taylor and Knox. Taylor’s vendees might possibly avail themselves of it, were they to lose the land. But what has Knox lost ? Half the true value of the land, only. His injury will be fully compensated by giving him that value, at the times when Taylor converted it to his use, and interest on it. If Taylor sold the land for less than its value, Knox ought not to lose by such a sale. So if Taylor sold it for more than its value, by converting it into other property, which proved to be a fortunate speculation, Knox would have no right to share in the profits. If he could ratisfy Taylor’s sales, and claim an interest in his speculations, he should be confined to a “division of the identical property, or its Value, which Taylor received for the land, and not be permitted to- abandon the property, and claim the price which Taylor and his vendees put on it. Whatever maybe the doctrine by which Taylor, in a controversy with his vendees, might be estopped to deny that the price put on the property received by him for the land, was the true cash or credit value of the property, we perceive no reason for applying that doctrine in this case between Taylor and Knox. It is, therefore, our opinion, that Knox’s executors should recover the cash value of half the land sold by Taylor, or his agents, and which was obtained in virtue of the warrant for eight hundred eighty eight acres and two thirds, with interest thereon from the times the land was sold, subject to a deduction of all reasonable charges for locating, surveying, paying taxes &c.
As it respects the warrant for seven hundred and forty acres, assigned in 1818, we have been unable to find in the record, any fact or circumstance from which it can be inferred, that Taylor took advantage of the ignorance of Knox, and concealed important facts which he ought to have made known, for the purpose of procuring the assignment. The contract for that warrant must be regarded as made in 1818, and is unimpeached by any thing exhibited. Consequently, it should be permitted to stand, and Taylor should be compelled to account for one half of the value of the warrant, with interest there *398 on from the date of the assignment. The decree of tho court is altogether erroneous in respect to this warrant.
Land warrants being delivered to a locator, with an assignment to him of half the right— inference that he was to have that half for his services, in locating Sf c.
A mere depository, or one who receives the money of another, but does not use it, is not to pay interest. —Whoever uses the money received for another, is liable for interest.
We think it sufficiently appears, from all the circumstances, that Taylor was to have half the two warrants for his services in procuring them. This seems to follow from the fact that Knox, in 1807, assigned Taylor half the warrant for eight hundred eighty eight acres and two thirds, while he retained the residue; thereby shewing that Taylor’s title to the half was then complete. As it does not appear, except from Knox’s statement, denied by Taylor., that the latter was bound to incur the expense of locating, surveying and carrying into grant the amount of both warrants, in consideration of the half assigned to him, we have deemed it right to charge Knox for these things so far as the half of-the warrant for eight hundred eighty eight and two thirds acres is concerned. But no such expense must be charged against Knox for the warrant of seven hundred and forty acres, the assignment of that being permitted to stand. It is obvious that Knox, when he assigned his interest in these warrants, was desirous to dispose of his lands in Ohio by sale. It is therefore highly probable, that he would be anxious to sell his warrants, without incurring the expense of locating, surveying &c. We look upon the transfers as absolute sales, and so intended to be, and have only thought proper to interfere to set aside the assignment of 1813, because Taylor did not make known the facts, which we are bound to presume were within his knowledge, and which, if communicated, would, or might have had an important influence over the conduct of Knox in making the contract.
Upon the point relative to interest, it is our opinion, that Taylor should be compelled to pay it, but, that it ought not to be compounded upon him. As a mere depository, Taylor would not be answerable for interest. As an agent, selling land and receiving money for his principal, he would not be answerable for interest, provided he had made no use of his principal’s money. But here Taylor acknowledges, that although he made no particular loan or purchase with 'the money of Knox, “ he may have sometimes used the money as his own. *399 bolding himself responsible to account for the same at any time, upon reasonable notice.” He has not so accounted. Having used the money, and failed to pay, he ought to pay interest. The true principle upon which interest is chargable, is laid down in the case of Cartmill vs. Brown, 1 Marsh. 577, and it applies to the facts of this case. Taylor was indebted to Knox the several sums collected by him, and in case he used the money as his own, instead of holding it in deposit, it was a conversion of that which did not belong to him. Shall he pay nothing for the tort, in thus using what he had no right to use ? Suppose a lawyer collects and uses his client’s money, and withholds payment, shall he thereafter be permitted to satisfy the debt without interest ? In such cases, we see no impropriety in treating the transaction precisely as it would be regarded if the agent, or lawyer, had executed his note to his principal, or client, for the amount of money received. The note would bear interest. The implied contract, in reason, should have the same effect. Knox insists that Taylor retained the money upon an express contract to pay interest. This is denied by Taylor, who avers that he held the money with the assent of Knox, with the understanding that he was not to pay interest. The statements of the parties cannot be reconciled. There is no proof upon which we can decide between them, and we have reached the conclusion that Taylor is accountable for interest, regardless of any special contract upon the subject.
An agent is entitled to interest on advances made, in transacting the business of the prin-' cipal.
The advanced, commissions charges of att agent making sales, should be deducted fiom the proceeds— decree for the balance.
Taylor made advances for Knox in paying taxes. He should be allowed interest on his advances from the times they were made up to the time when the funds of Knox, received by him, were sufficient to extinguish the advances so made and the interest thereon.
Taylor’s reasonable charges and commissions should be deducted from the- amount of money collected for the sales of Knox’s lands, and the balance left should carry interest. This was not attended to in the adjustment of the accounts which was made the basis of the decree. We see no proof in the record which shews how much Taylor ought to be allowed for his services. *400 in paying taxes, selling lands, and collecting and receiving the money. On the return of the cause, these things may be be enquired into. Nor does it appear 'from vouchers filed, how much he paid for taxes. We suppose the account is correct, but it should appear so in proof, by an exhibition of the vouchers, which are no doubt in the possession of Taylor.
In trover, the jury may give damages equal to the value of the thing converted and the interest on it. Upon the same principle, the chancellor,in de creeing against an - agent who had received t“ trade” on his o -n account, for the land of his principal, may include interest in the decree, in addition to the cash value of the la'nd ats the time of the' sale.
counts, Sr take .^loof' Tins cause is to be referred to a commissioner to state the ac-
It may be asked, why we allow interest on the value of Knox’s half of the eight hundred eighty eight acres and two thirds of land and seven hundred and forty acres warrant, seeing that the value has never been liquidate! between the parties by any ascertained contract? The principle on which it is allowed may be found in Sanders vs. Vance, 7 Mon. 213. There it is said that the jury may, in trover, give damages- “equal to the value of the thing converted and interest.” Now, as the assignment of the half of the eight hundred eighty eight acres and two thirds, executed in 1813, has been disregarded upon the principle of svppressio veri, and Taylor had no right under that contract to appropriate the land to his use, but did it, we see no reason why the measure of bis responsibility should not be the same as if it had been a chattel which he had converted. - According to the evidence, thirty three cents and a third was a fair price, per acre, for the half of the warrant for seven hundred and forty acres Taylor says the price was liquidated at that. We shall so take it, and direct interest to he allowed on one hundred twenty three dollars thirtv three cents afid a third, from the 13th of January, 1818, when the warrant was assigned, up to the time of rendering the decree, as the measure of recovery for Knox’s half of the seven hundred and forty acres warrant.
On the return of the cause, the circuit court will appoint a commissioner to state the accounts, and to receive proof; and will take such other steps as may be proper to decide the controversy in conformity to the principles of the foregoing opinion.
Decree reversed, with costs.