Judge Ewing
delivered the Opinion of the Court.
This case was formally before this Court, and its history, as as the principles then settled, will be found reported in 1 Dana, 391. Upon the return of the cause to the Circuit Court, a commissioner was appointed to state the accounts, and received proof, preparatory to a settlement of the case as therein directed.
The commissioner made his report, to which exceptions were taken by the counsel for Taylor, which were in part sustained, and the errors corrected, and in part overruled, and a final decree rendered in favor of Knox’s representatives, for seven thousand three hundred and sixty four dollars and ten cents, with interest thereon from the date of the decree.
From this decree Taylor has appealed to this Court, and Knox’s representatives have prosecuted a cross writ of error.
First. It is objected by the counsel for the appellant, the Circuit Court erred in rejecting the depositions of James Taylor, junior, and Samuel Winston, and the papers referred to in them. We think that those depositions and papers were properly rejected: first—because they came too late; secondly, because, if admitted, they could have availed nothing.
This suit was commenced in 1821. In Taylor’s original answer, he alleges that he purchased up Nancarrow’s claim, at six hundred dollars, which covered the 888⅔ acres, and removed it, for the security of the complainant’s claim. The decision of this Court, in which it was settled that Knox’s executors were entitled to the *467 value of one half of the 888⅔ acre tract, subject to certain deductions, was filed in the Circuit Court at the March term, 1834. At which term, a commissioner was appointed to receive proof and make report. At the March term, 1835, the commissioner made his report, having taken a whole year to receive proof. During all which time no effort seems to have been made to take the depositions.
Depositions (not offered in due time) were rejected; if they had been received, they would not have established all the facts necessary, to produce a different decree: no error, therefore, in rejecting them.
The report lay over till the June term following, when exceptions were taken to it, and the cause further continued until the March term, 1836. At which term, after the exceptions were taken up, and the argument thereon was progressing, the counsel for the defendant moved the Court, for the first time, to file the depositions with the affidavit of Taylor. Notice to take them was served on the agent of Knox’s representatives, on the 3d of March, 1836; No excuse is made out in the affidavit of Taylor for his failure to take them before. Under all these circumstances of palpable negligence, we do not feel authorized to disturb the opinion of the Circuit Court, in a matter appertaining to the speedy preparation of causes for trial, in which, for the public good, as well as for the interest of litigants, he ever should be permitted to exercise a sound discretion.
But the depositions could avail nothing if admitted: First. Because it does not appear, what he gave for Nancarrow’s claim. Secondly. If the sum alleged by him, be the true amount, it seems that other claims not embracing the 888⅔ acre survey, were included in his purchase, and the relative value of each does not appear. Thirdly. The warrant of Nancarrow was withdrawn by Taylor, and located, no doubt, elsewhere; and of course he has availed himself of the benefit of his purchase, to some if not to the full extent of the amount paid for it, and if it falls short, the amount chargeable to Taylor, does not appear, after deducting the amount that he must have made out of it. And, fourthly—it does not appear to this Court, that the claim of Nancarrow was paramount and superior to the claim of Knox.
Rescission—by decree—of a contract of sale; the consideration consisted of advances, to pay taxes, &c., by the vendee, for the vendor, all of which were included among the accounts adjusted in the case: there was no error in omitting to decree a restoration of the consideration thus accounted for.
Credits claimed by T. disallowed, as he has, in effect, had them allowed, in the accounts and decree.
Upon a rescission of a sale of land, the vendor is entitled to the entire tract, including the surplus. An allowance, by the Cir. Ct. of ten per ct. com. for selling lands, approved.
*468 Secondly. It is objected that the assignment of the balance half of the 888⅔ acre warrant, purports to have been made upon a valuable consideration; that the assignment itself implies that something valuable was given for it; and upon the dissolution of the contract, for fraud, each party should be placed in statu quo. And as Knox gets the land, or the value of it, Taylor should have refunded to him the consideration. And as the former opinion of this Court is silent on this subject, it should have been allowed by the Circuit Court, in the settlement of the accounts.
This objection is based upon an entire misapprehension of the record, and of the former opinion of this Court.
Taylor, in his answer, does not pretend that he paid any thing for this purchase except what he advanced in paying the taxes upon the other lands of Knox. The former opinion of this Court, directs those payments to be allowed him, with interest thereon, and they have all been allowed him in the report of the commissioner, and the decree of the Circuit Court.
Thirdly. It is objected, that proper estimates have not been made, and credits allowed Taylor, in the settlement of the 888⅔ acre warrant.
We have been able to perceive no error in the estimates or credits. It is true, that the report is made out upon the basis of allowing Knox the one half of the value of the tract; when, by the agreement of the parties, the one third is to be deducted from Knox’s half, as compensation to Taylor for locating. But the one third of the aggregate of principal and interest of the one half, is deducted in the decree, which produces precisely the same result as if the calculation had been made upon the basis of two thirds of one half, which was the interest to which Knox was entitled. Nor can we perceive any even plausible grounds in the objection to Knox being entitled to his equal share of the surplus in the tract. The one half of the warrant belonged to him. The contract, by which he was divested of it, was declared fraudulent and void, by which he was restored to all his original interest in the warrant, and *469 to the land acquired by it. Whatever land, therefore, was covered by that warrant, he was entitled to the one half. And, the land having been sold, he was entitled to one half of its value, and interest thereon, as was determined by this Court in the former decision.
An agent employed to locate land warrants, & sell the lands, purchased one of the warrants of his principal, located it, and sold the land; but, because he had suppressed information concerning the claim, which it was his duty, as agent, to communicate to his principal, his purchase was held to be void, and he was required to account for the proceeds of the sale made by him: he is entitled to no commissions on that sale.
This Court determined that an agent, who had long held the funds of his principal, should pay interest on them, but not compound interest; & that he should receive interest on all advances made by him for his principal: the mode in which the commissioner calculated the interest stated, and approved—as the calculation did not, in any instance, include interest on interest, which is what is meant by ‘compound interest;’ tho’ moneys received, were considered as applied to pay off any interest that had accrued due to the party receiving them, then towards the principal — leaving the balance of principal still to bear interest: this mode of calculation is in conformity to the rule established by the act relating to partial payments on bonds &c.
*469 We also think that ten per cent, on the amount is a sufficient compensation to Taylor for selling the lands of Knox and collecting the money. At least we perceive no just grounds to object to the opinion of the Circuit Court, in fixing this allowance. Nor do we think there would be any just pretext for allowing Taylor a commission on the value of the 888⅔ acre tract sold by him. The sale of this tract was not made, in whole or in part, as the agent of Knox, but for his own benefit, claiming the land as his own, under a pretended contract with Knox. By the sale, he had deprived Knox of his land, and converted it to his own use. And, through a tedious litigation, resisted Knox’s right to any part of it. And when he has succeeded, through much perplexity and delay, in establishing his right to the value of the article converted, he claims commission upon the sales, or pay for the conversion. He may as well claim a commission for the sale and conversion of Knox’s horse.
Besides, we perceive nothing in the former decision of this Court, which fixes the basis of the settlement, by which we would feel warranted in allowing commissions for the sale of this tract. The Court, in that opinion, says, “It is, therefore, our opinion, that Knox’s executors should recover the cash value of half the land sold by Taylor, or his agents, and which was obtained in virtue of the warrant for eight hundred and eighty eight and two third acres, with interest thereon from the time the land was sold, subject to a deduction of all reasonable charges for locating, surveying, paying taxes,” &c.
No mention is made of any deduction by way of compensation, or commission for selling and collecting.
Fifthly. It is objected, that interest has not been calculated upon the sums due Knox, as directed, according to any fair interpretation of the former decision of this Court. That decision directs, “That, in relation to interest, *470 “Taylor ought to be compelled to pay it, but that “it ought not to be compounded upon him.” Again: it says, that “Taylor made advances to Knox in paying “taxes. He should be allowed interest on his advances, “from the times they were made up, to the time when “the funds of Knox, received by him, were sufficient to “extinguish the advances so made, and the interest “thereon.”
In the report, interest has been calculated, on the advances made by Taylor, up to the times when the funds of Knox came to his hands, and those funds have been deducted from the aggregate of principal and interest. And when those funds exceeded the amount of the advances made, interest has been calculated upon the excess of the principal only, deducting the advances made by Taylor from time to time, first from the interest and then from the principal, if the advances at any time exceeded the interest. Interest has in no instance been calculated upon interest. But the advances or payments, as they were made, were first made to extinguish the interest, and the balance, if any, applied to the reduction of the principal. We do not understand this as compound interest. Interest upon interest is that which we have been taught to understand as the true meaning of the term compound interest. Here interest has not been calculated upon the interest; but as the interest was as justly due as the principal, and carried no interest, it was thought just to apply the advances or payments on each side, first to the interest account, leaving the principal which was still unpaid, to draw interest as before. And this is according to the mode prescribed by our statute, when partial payments have been made on “ bonds, notes, and other assurances,” which bear interest; and which has been sanctioned by this Court, as the proper rule, in other cases, which do not fall within the express provisions of our statute. 1 Marsh. 584, Guthrie &c. vs. Wickliffes, and subsequent cases. We see nothing repugnant to this mode of calculation, either in the former decision of this Court, or in the principles of justice.
If it were proper to allow interest, it was as proper to *471 apply the advances, made by Taylor in paying taxes, &c. to its payment or extinguishment first, as it would be to apply partial payments in that way. Those advances are in fact nothing more in equity than partial payments, and were so considered in the decree, and should be applied in the same way.
In regard to interest, courts of eq. follow the rules of law; so, where the liability is such that a judg’t upon it, would be for damages only, a decree for its enforcement, must be for a sum in solido, not bearing future interest. The act of Feb. 16, 1837, which declares that judg’ts in general, and decrees, thereafter rendered, shall carry interest, till paid, cannot be applied to sustain a decree rendered before its passage: and a decree rendered before the act, is reversed, for error in making it bear current interest; yet the new decree, to be rendered to correct the error, will come within the act, and bear interest.
There is an objection to the decree, which has not been urged by the counsel for Taylor, in argument, and in relation to which, our only difficulty has been to determine whether the errors assigned are sufficiently broad and special to embrace it. And that is, to the allowance of current interest upon the decree, which has been granted, upon the aggregate of principal and interest, from its rendition. Upon reflection, we incline to think, that the errors assigned may be construed to embrace it; and we are satisfied that it ought not to have been allowed.
Equity follows the law in the assessment of interest. Had an action of assumpsit been brought in this case, running interest could not have been allowed. And should not, therefore, have been allowed in equity. Such an allowance would, in truth, be compounding the interest upon Taylor. For the interest unpaid from the rendition of the decree, is made to bear interest until paid, as well as the principal. The whole amount due, in principal and interest, should have been decreed, as an aggregate, to the complainants; as at law, the whole amount would have been recovered in damages. The statute approved February 16th, 1837, (Acts of 1836-7, 207,) can have no effect to correct this error. It was enacted since the rendition of the decree in this case, and provides that “all judgments or decrees hereafter rendered in this Commonwealth shall carry interest at the rate of six per cent, per annum, from the date of the judgment or decree.” The decree must stand or fall by the laws that existed when it was rendered. But when the case goes back to the Circuit Court, as the decree will then be rendered after the enactment, a decree for accruing interest may be allowed.
For this error, the decree of the Circuit Court must be reversed on the appeal.
Bill against an agent for the sale of lands, &c., to recover the proceeds of sales, &c. With his answer, he filed certain bonds (which were with drawn by the complainant’s agent,) and also, abstracts of certain judgments against purchasers of the lands. The commencement of the suit did not suspend his authority to collect those judgments. But, as he might consider them under the control of the court, from the time when he filed the abstracts, he could not be made accountable for negligence in failing to collect them afterwards.
Either party might have collected them; but it did not appear that either had; and the proceeds were not included in the decree against the agent. The decree, therefore, should have been so framed, as not to bar his liability for any money he may have received on account of the judgments. And, as it appears that he retained the titles, as security for the debts, he should be required to produce in court abstracts of the boundaries, &c., and all receipts of lawyers for the notes on which the judgments were recovered, and other documents, evidencing the principal’s right to the judgments and their proceeds.
*472 On the writ of error in favor of Knox’s executors, it is contended, that the Circuit Court erred in excluding from computation, the three judgments against Chapman, Poe, and Plummer.
The complainant, in his original bill, called on the defendant to render an account of the sales, which he had made of his lands, the amount for which he had sold them, the sums collected and the true state and condition of his actings and doings, in his fiduciary character.
The defendant, Taylor, answered the bill at the March term, 1822, and with his answer, exhibited and filed sundry notes and bonds for lands sold, and also abstracts from the clerk’s office of Clermont county, Ohio, of the three judgments before referred to, besides rendering an account of the moneys collected.
At the same term, leave was given the complainant to withdraw the notes and bonds, on leaving office copies, if he should think proper.
At the January term, 1823, the death of Knox was suggested, and the suit revived in the names of his representatives. And at the ensuing October term, leave was given, by the consent of the parties, to Benjamin Logan, the friend of Knox, to withdraw the notes and bonds, and his receipt for the originals is filed in the papers.
Nothing is said in these entries, or in any other part of the record, about the judgments.
Taylor states in his answer that he held the title, in all the sales that he made, as security for the purchase money.
The judgments were in the name of Knox.
From these facts it would seem to follow, that the judgments were secure, and may have been collected by Knox, as the principal, or his representatives, or by Taylor as the agent.
For we do not regard the commencement of the suit, as so far terminating his powers, as to restrict him in the collection of the judgments.
But whether they have been collected by either, does not appear. If they or any parts of them have been *473 collected by Taylor, then he is responsible to the complainants, for the amount so collected, in addition to the decree rendered. If Knox or his representatives have collected them, then the decree in amount is correct, and no injury has been done to either. If they remain uncollected, then the complainants are entitled to them, and to all the evidences of title to them, which may be in the defendant’s possession, so as to enable them to enforce their collection without difficulty.
To entitle the complainants to recover from Taylor the amount of these judgments, it behoved them to show, either that he had collected them, or that he had been guilty of that gross negligence in their collection, by which they had been lost. They have shown neither. For though the commencement of the suit may not have operated to terminate his powers in relation to their collection—when he rendered an abstract of them in court, he was justifiable in considering them as so far within the power, and under the control of, the court, and subject to be collected by the complainants, as to suspend his further interference with them. He, therefore, should not be made responsible for negligence in failing to collect them.
But as he, most probably, must have taken the attorney’s receipt, into whose hands the notes were placed for collection, and who would look to Taylor as the person to whom he stood bound to account, it may be that he has collected the money and paid it to Taylor, or that Taylor himself has collected it. If so, as those judgments were in part the subject of litigation in this suit, without some indication in the decree, that the complainants were entitled to them, in addition to the amount decreed them, there certainly would be danger, that Taylor might, in any subsequent proceeding to reach these funds in his hands, rely upon the conclusiveness of this decree in bar. If so, the judgments and their proceeds might be wholly lost to the complainants. Besides, as the lands were held as security for the purchase money, and the boundary, as well as specific terms of sale, are confined to the knowledge of Taylor, it would be proper to require him not only to *474 surrender to the complainants all evidences of their title to said judgments, but also abstracts of the boundaries and terms of sale, so as to enable them to avail themselves of all the means which law or equity may afford them, to enforce their collection.
It is, therefore, the opinion of this court, that, the decree of the Circuit Court be reversed on the writ of error, as well as on the appeal, and that the defendants in each case pay the costs in this Court; and that the cause be remanded, and the interest be calculated upon the principal amount embraced in the former decree, up to the rendition of the final decree, and the whole aggregate amount be decreed to the complainants, with accruing interest. And that it further be decreed, that the complainants are entitled to the judgments against Naaman Chapman, Jos. Poe, and Jeremiah Plummer,in addition to the decree for the money, and that Taylor be ordered and required to surrender to the complainants all evidences of title, or control over the judgments, and also, that he furnish and exhibit in Court, an abstract of the boundaries of the land sold, for which each of the notes were given, and also the terms of sale, that the whole may be delivered over to the complainants. And as it may be, that Taylor has collected the money on those judgments since this suit was commenced, it should be clearly expressed in the decree that the complainants are entitled to it, and that their right to the same is not concluded by the decree.