JUDGE HARDIN
delivered the opinion op the court.
Asenatb Tunstall by her deed, dated the 7th of March, 1859, conveyed to her relations, Robert Riddle, sr., Asenath Riddle, Alice Riddle, and Rowland Lewis, all her property, consisting .of her life-estate in a tract of about eighty acres of land on which she lived, her life-estate in a slave named Bristow, the absolute title to four other slaves, and personal estate and choses in action. The conveyance was in its nature voluntary and fraudulent, being intended to avoid the collection of a claim then prosecuted by Morgan Diggs in a suit against the grantor. But the deed contained a stipulation that *195 the grantees would “ support and take care of and provide for the said Asenath Tunstall for and during her natural life, at either one of the houses of the parties aforesaid, or at the place where she now (then) resides.” Soon after the conveyance was made Lewis moved on the land and took possession and control of most of the slaves, personal property, and notes and accounts of Mrs. Tunstall, including a note on himself for about nine hundred dollars. It seems that he attended to such business as concerned the estate, and with some assistance from Robert Riddle provided such articles for the support of Mrs. Tunstall as it was necessary to buy; she remaining at her former home and having the service of some of the slaves till a short time before her death, in 1865, when, having become dissatisfied with Lewis or perhaps his wife, she was removed to the house of Silas Hill, where she died. Lewis was the owner of the land in remainder, and made some improvements for the convenience or comfort of Mrs. Tun-stall, but which inured also to his own benefit.
After the death of Mrs. Tunstall the slaves were amicably divided; but the accounts of the parties relative to the personal estate remaining unadjusted, the Riddles brought this suit against Lewis for a settlement in August, 1866; and he by his answer resisted a recovery against him on several grounds, and, presenting a counter-claim against the plain.tiffs, sought a recovery against them.
The cause was referred to a commissioner, with numerous specific directions as to facts to be ascertained; but the court failed to lay down, as it should have done, the principles by which the commissioner should be governed in the application of the facts. (Sharp v. Morrow, 6 Mon. 300.) Under this general reference the commissioner made a report, charging Lewis with the aggregate sum of $1,859.85 for his own debt aud those of others collected by him, and the hire of slaves collected by him from others, and interest on the various *196 sums; but not including rent, nor the hire of slaves in his service, nor personal property consumed in consequence of his residence on the land. And he was credited by various sums, including seven hundred and seventy dollars as paid February 5, 1861, on the claim of Diggs, and money paid for groceries and supplies for Mrs. Tunstall, a small amount for repairs and work, and fifty dollars for his personal services in managing the business of the estate; all of said credits, with interest from their date, amounting to $1,979.91, showing a balance in favor of Lewis of $120.06. And the commissioner reported that Robert Riddle was accountable for $289.73, principally for the hire of one of the slaves and interest thereon; of which, after deducting said sum of $120.06, a balance would remain for distribution of $169.67.
Overruling exceptions to the commissioner’s report, the court adjudged that Lewis, on the basis thereof, recover against Robert Riddle said sum of $120.06; and as to the residue of the amount found due from Riddle he was ordered to apply it first to the payment of the costs, and if any sum then remained the court directed a division of it among the parties. To reverse that judgment the plaintiffs prosecute this appeal.
It is contended for the appellants that the position of Lewis 'being that of a trustee, he ought not to have been credited by .several sums of money paid to or at the instance of Mrs. 'Tunstall, which did not appear to have been necessary for her support. But although, as between the parties to the deed, it entitled the grantees to share equally what might remain of the estate in the hands of any of them, as it was made for no adequate consideration and for a fraudulent purpose, and was accepted, as shown by the proof, with an assurance to Mrs. Tunstall that it should not affect her rights, we do not think the appellee incurred any responsibility by permitting her to have or dispose of any part of the estate, which he *197 seems to have received rather to manage for her than upon any express agreement with the other beneficiaries under the deed.
But from the evidence we are satisfied that the appellee was fairly compensated for all he contributed toward the maintenance of Mrs. Tunstall by the use of the land and the slaves not hired to others, and the produce of the farm he used or caused to be consumed; and the credits for expenditures for supplies, as well as for work and repairs, ought not to have been allowed; nor should he have been allowed compensation for his personal services. It is a general rule, though not Avithout exceptions, that a mere voluntary trustee is not entitled to compensation for his services. (Breckinridge v. Brooks, 2 Marshall, 335; Miles, &c. v. Bacon, &c., 4 J. J. Marshall, 457; Hite v. Hite’s executor, 1 B. Monroe, 177; Green, &c. v. Winter, 1 Johnson’s Ch. R. 26; Manning v. Manning, ibid. 527.) There is nothing in this case to make it an exception to this general rule.
There seems also, according to the evidence in the record, to have been an error in allowing the sums of seven hundred and seventy dollars and $215.60 for the principal and interest of a receipt given by Morgan Higgs. Notwithstanding the sum expressed in the receipt, it seems from the evidence that Higgs only received from the appellee five hundred dollars; but this may be further litigated on the return of the cause.
The mode of computing interest and applying credits, adopted by the commissioner and approved by the court, appears also to have been incorrect. Instead of computing interest on the several sums allowed in favor of the appellee, and setting off the aggregate amount as an independent demand against the amount of the sums due from him, with interest ascertained in like manner, the several payments should have been so applied at their date as first to discharge the interest which had already accrued on the indebtedness *198 of the appellee. (Guthrie, &c. v. Wickliffes, 1 Marshall, 584; Taylor v. Knox, 5 Dana, 470.)
It does not seem to have been improper to charge Riddle with the hire of the slave Margaret; but he should also have been credited by whatever he contributed toward maintaining Mrs. Tunstall, as he did not have the use of other property to remunerate him for such contributions. We do not find in the record any sufficient ground for charging Riddle with the sum of $27.50 for a note on Lilly; but this, as well as the credits to which Riddle may be entitled, and the amount claimed to have been paid by the appellee to Morgan Diggs, "may be further investigated on the return of the cause, both parties being allowed to adduce further proof as to them.
Except as herein indicated the credits for various payments allowed in favor of the appellee will not be rejected, nor will any additional charge be made against him.
For the errors suggested the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.