Rapallo, J.
It is very clear that the policy upon which the defendant collected the money in dispute in this action was a renewal or reissue of the original policy, Ho. 1,394, upon the life of O. H. Dutton, which had been intrusted by him to the defendant for the purpose of being canceled. After the surrender of the original policy by ike defendant to the insurance company, but before the notes of O. H. Dutton securing the payment of one-half the premium had been canceled or surrendered, and while they were in the hands of Mr. Phelps, the defendant and George D. Dutton (through George D. Dutton) applied to Mr. Phelps to have a policy issued for their benefit. In pursuance of this application, Mr. Phelps wrote to the company, which was located in Vermont, the letter set forth in the findings, inclosing to the company the notes of O.'H. Dutton, and stating that he (O. H. Dutton) wanted to renew his policy, and that his friends George D. Dutton and Philip Willner were to help him, and requesting the company, if it was willing to renew the policy, to make it payable to them, or for their benefit, and that they would see that the policy was kept up.
*316 In response to that letter the company issued and sent to . Phelps the policy of July 28, 1863, which was delivered by Phelps to Dutton. This policy shows upon its face that it was a reissue' of the original policy Ho. 1,394. It acknowledges the receipt of the premium from O. H. Dutton; states that he is the assured; insures his life in the sum of $6,000 for the benefit of George D. Dutton and Philip Willner, and states that it is subject to all the liabilities and entitled to all the benefits of original policy Ho. 1,394.
The company retained the notes of O. H. Dutton which had been given to secure the premiums on policy Ho. 1,394, and continued to hold them until 1864, when they were paid in part by dividends from 1860 to 1864 on the original policy Ho. 1,394, and on the reissue of it, and in part by cash paid by G. D. Dutton and the defendant, and were afterward surrendered to the defendant. It does not appear that they were even surrendered to O. H. Dutton.
After the death of G. D. Dutton, the defendant, having purchased his interest in the policy, procured a second reissue, in all respects like that of July 28, 1863, except that it purported to be for the benefit of Willner alone, instead of Dutton and Willner.
The substance of the whole transaction, stripping it of immaterial matter, is, therefore, that the defendant having undertaken to act as the agent of O. H. Dutton, for the purpose of having his policy canceled, and thus relieving him from further liability for premiums or on his premium notes, instead of so doing, agreed with the company to continue the. policy for the benefit of himself and his associate G. D. Dutton, leaving the premium notes of O. H. Dutton in the hands of the company uncancelled, and his principal exposed to the risk of being called upon for their payment in case of the insol- , vency of the company.
It is not difficult to see the advantages gained by the defendant and his associate, by making this use of the position in which he was placed by his agency. If he had applied to the . company on his own account for an original insurance upon *317 the life of O. H. Dutton, he would have been obliged to pay the increased rate of premium resulting from the addition of upwards of five years to the age of the assured. By continuing or obtaining the reissue of the original policy, he secured the lower rate of premium, subject only to the payment of the outstanding notes of 0. H. Dutton, and as against these he had the benefit of the dividends or return premium, accruing by .virtue of the old policy upon the cash payments which 0: H. Dutton had made during the past five years and upward.
The liberality of the company in thus apparently allowing a third party to insure' on such exceptionally favorable terms, is explained by the letter of Mr. Phelps, by which the company was induced to make the renewal or reissue. By this letter it was represented to the company that the renewal was requested by 0. H. Dutton, the party equitably entitled to these benefits, and that the defendant and Gr. D. Dutton were acting only in the capacity of his friends. Justice to the defendant requires that it should be clearly stated that there is nothing in the case which would warrant even an intimation that he had actual knowledge of the contents of this letter. If he had had such knowledge and subsequently accepted the reissued policy, the case would be too clear for discussion, and it cannot be presumed that he would have laid claim to the proceeds of the policy. (Morton v. Fewart, 2 Y. & Col. Chy., 67.) But the legal rights and liabilities of parties are often affected by the acts and representations of others of which they had no knowledge, where they have received the benefit of the contracts induced by such acts or representations. In this case it was the representation of Phelps, that the renewal of the policy was requested in behalf of 0. H. Dutton, which brought the renewal. It is not to be presumed that the company would have granted it, had they not been led to suppose that O. H. Dutton desired to retract his proposition to cancel the insurance. When O. H. Dutton’s notes, which had been sent to Mr. Phelps for the purpose of consummating the cancellation Of the insurance, were returned to *318 the company, it must have supposed that this was done with the consent oí O. H. Dutton, and not that other parties were using these notes for their own benefit without his authority. The letter of Phelps was written in consequence of the application of Gr. D. Dutton to him to procure a policy. Gr. D. Dutton made the application on behalf of himself and the defendant. Phelps was, therefore, the agent of G. D. Dutton and the defendant to procure the policy from the company. He had no power to issue it himself. When it came they accepted it, and saw from its contents that it was a renewal or reissue of the old policy, and by accepting it they must be deemed to have adopted the instrumentalities by which it was obtained, to the extent at least to which their right to the policy might be affected by the means employed by their agent to obtain it, even though innocent of any complicity in those means. (Veazie v. Williams, 8 How. U. S., 134; Dexter v. Adams, 2 Denio, 646; Bennet v. Judson, 21 N. Y., 238; Story on Agency, § 419; Dunlap’s Paley on Agency, p. 325.)
The application of this principle leads to the result that the defendant can have no greater claim to the proceeds of the policy thanhe could have if he had, while acting as the agent of O. H. Dutton to procure the cancellation of the contract, obtained a renewal of it payable to himself, on the representation that he was acting as the friend of O. H. Dutton and at his request, and had used for that purpose the notes of O. H. Dutton, which he knew his principal desired canceled.
But, aside from the considerations growing out of the letter of Phelps, and treating the case as if the application for a reissue had been made by the defendant directly to the company, without any representation that he was acting in behalf of O. H. Dutton in obtaining the renewal, then the question arises whether the defendant can, under the general rules of law governing the relations between principal and agent, retain the benefit of this transaction.
It is a well settled and salutary rule that “ a person who undertakes to act for another in any matter shall not, in the *319 same matter, act for himself.” It is only by a rigid adherence to this simple rule that all temptation can be removed from one acting in a fiduciary capacity to abuse his trust, or seek his own advantage in the position which it affords him. One consequence of a violation of the rule is that the agent must, at the option of his principal, account to him for any profit he may have made by the transaction. It matters not how fair the conduct of the agent may have been in the particular case, nor that the principal would have been no better off if the agent had strictly executed his power, nor that the principal was not in fact injured by the intervention of the agent for his own benefit. If the agent deals with the subject-matter of his agency, or, by departing from the instructions of his principal, obtains a better result than could have been obtained by following them, the principal can claim the advantage thus obtained, even though the agent may have contributed his own funds or responsibility in producing the result. The rule which places it beyond the power of the agent to profit by such transactions is founded upon considerations of policy, and is intended not merely to afford a remedy for discovered frauds, but to reach those which may be concealed; and also to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others, or to which their agency or trust relates. (Keech v. Sandford, 3 Eq. Cases Abr., 741; York Buildings Co. v. McKenzie, 8 Bro. Par. C. [Toml. ed.), Appx., and 3 Paton, 378; Davoue v. Fanning, 2 Johns. Ch., 252; Cumb. C. and I. Co. v. Sherman, 30 Barb., 553, and authorities cited; Moore v. Moore, 5 N. Y., 276; Gardner v. Ogden, 22 id., 327; Ringo v. Binns, 10 Peters, 269.) All profits and every advantage beyond lawful compensation made by an agent in the business, _ or by dealing or speculating with the effects of his principal, though in violation of his duty of agent, and though the loss, if one had occurred, would have fallen on the agent, are for the benefit of the principal. (Dunlap’s Paley on Agency, 51; Story on Agency, *320 §§ 207, 211, 214; Bartholomew v. Leach, 7 Watts, 472; Campbell v. Penn. Life Ins. Co., 2 Wheat., 64; Taylor v. Knox, 1 Dana, 395.)
, The defendant in this case admits in his answer “ that O. H. Dntton requested the defendant, as his agent, to surrender the policy of insurance for cancellation, and intrusted him with the same for that purpose,” and the same fact is found by the court.
It was by being thus intrusted with the policy, as agent of O. H. Dutton, that the defendant was brought into relations with the company and enabled to make the arrangement-which he finally did. The policy belonged to O. H. Dutton, and all profits resulting from it, though acquired by his agent by departing from the instructions given him, also belonged to the principal.
In substance, the defendant, instead of canceling the policy renewed it without the knowledge of his principal and had it made payable to himself and Gr. D. Dutton, deriving from such renewal much greater advantages than he coiild have derived from an original application on his own behalf for a policy on the life of O.'H. Dutton, and ultimately receiving the proceeds of the renewal. It is contended that before obtaining the renewal or reissue, the defendant had executed the power conferred upon him by O. H. Dutton by surrendering the original policy. That when that had been done all interest of O. H. Dutton in the matter had terminated, and the defendant was at liberty to make whatever contract he pleased with the insurance company for his own benefit.' This argument is too transparent to conceal the real nature of the transaction. It is true that the defendant did at one time physically surrender the policy, and at that time he no doubt intended to carry out the instructions of his principal. The premium notes were thereupon sent by the company to Hr. Phelps for the purpose of being surrendered, and the defendant must have known that one of the purposes of his principal in surrendering his policy was to extinguish those notes, and that to consummate the matter they *321 should he delivered up. But while the notes were still in the Bands of Phelps uncanceled, and the matter thus.capable of reconsideration, the defendant, at the instigation of George D. Dutton, consented to undo so much as he had previously done in pursuance of his agency, and to accept a reissue of the policy for the benefit of himself and G. D. Dutton, giving them in terms the benefit of the original policy, and consequently of the payments which O. H. Dutton had previously made thereon, and leaving his notes outstanding in the hands of the company as security for the unpaid premiums. It is plain that the new policy thus obtained was a mere substitute for or continuation of the surrendered one, and not a new and independent contract. If, on the surrender of the original policy the, company had paid a sum of money to the defendant by reason thereof, no one would question that he must account for it to his principal, though the principal had authorized him to surrender it for nothing. Instead of a sum of money the company gave the defendant a contract, part of the consideration of which proceeded from his principal, and out of which the defendant has realized a considerable amount. On what principle can the agent retain this benefit with any greater show of right than he could a direct payment ? The consideration for it was in part the policy with which he had been intrusted by his principal, and in part the notes of his principal, which, as he well knew, ought to have been extinguished. The fact that in addition to these the agent contributed some of his own funds, gives him no right except that of reimbursement of what he has contributed.
It is said that O. H. Dutton sustained no prejudice by the renewal of the policy and the redelivery of his notes to the. company, for the reason that the acceptance by the company of the surrender of the original policy would have been a good defence to the notes. Whether or not this defence would have been available it is not necessary to inquire. The notes being left outstanding as apparently valid securities, and the consequent exposure to an action, and to the necessity of defending it, would be some prejudice. The defendant *322 took up the notes after the lapse of a year or more, availing himself of them in the meantime to obtain credit for the unpaid premiums accrued on the policy, and it hardly lies in his mouth to say that they were not valid obligations. But, as before remarked, it was not necessary that the principal should have been prejudiced. If the agent made a profit out of the transaction he is bound to account for it, though made without the knowledge or authority of the principal, and without risk or expense to him.
If, when it was proposed to the defendant to renew the policy for the benefit of himself and G. D. Dutton, the defendant had asked the consent of O. H. Dutton so to do, and to use his notes for the purpose, and such consent had been voluntarily given, then, in, the-absence of any misrepresentation, concealment or fraud, the defendant might have been discharged from his obligations as agent, and might have acquired a beneficial interest in the policy. (See Ex parte Lacey, 6 Ves., 625.) But no such consent having been asked, and the transaction having been kept secret from 0. TT. Dutton during the residue of his lifetime, the defendant’s relation as agent in the matter did not terminate, and the plaintiff has the right to adopt his acts, and call him to an account for the profits he has derived from the transaction.
The state of the accounts between 0. H. Dutton and the estate of his father,- or between him and the plaintiff, can have no bearing upon the case. The policy was not pledged for any debt; and if any is due to the defendant, it is not a lien on the proceeds of the policy.
The defendant is entitled to credit for all payments necessarily made to preserve the policy.
The residue he must be deemed to have received in trust for the legal representatives of 0. H. Dutton, deceased.
The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.
All concur, except Grover, J., dissenting, and Allen, J., not voting.
Judgment reversed.