3s 361
136 309

WEAVER, Administrator, v. CHILDRESS.

1. Where A. under covenant, sold land to B. for a sum certain, and B. agreed to pay one half thereof, on the first day of January thereafter, on or before which day, A. covenanted to give him possession; and the other half thereof, on the subsequent January, at which time A. further covenanted to make B. valid titles, held that these are mutual and independent covenants.

2. And in a suit brought by A., after the time when he was to make title had elapsed, to recover the purchase money of B., who is presumed to be in possession, an averment in the declaration of A's. ability and readiness to convey, is surplusage.

COVENANT.   In the Circuit Court of Madison county, Childress commenced suit against M. Weaver, as administrator of W. Weaver, deceased, upon an instrument under seal, entered into by Childress and W. Weaver, in July, 1819, in the following words, viz:   "Know all men by these presents, that I, Vaulton Childress, of &c. have this day bargained and sold unto William W. Weaver, a certain tract of land, lying &c. and have agreed to take eight hundred and fifty dollars for the said land, to be paid in the following manner: four hundred and twenty five dollars, the first day of January next, and four hundred and twenty five dollars more, the first day of January, 1821, at which time I am to make said Weaver, a good and lawful right in fee simple, free from the claim or claims of any person or persons whatsoever, and am to give said Weaver peaceable possession of said land, on or before the first day of January next; given under my hand and seal, this 29th July, 1819."  This agreement was signed by both the parties, upon which the plaintiff below, on the first day of December, 1826, brought his action for the recovery of the purchase money; averring in his declaration, that he did put defendant's intestate in his lifetime, into pos-

46

session of the land, as required by his covenants; and that he was ready on the first day of January, 1821, and had been ever since, and was then ready to convey the land, but that neither the intestate nor his administrator, or other person had paid, or offered to pay, either of said sums of money, &c. The defendant below craved oyer, and filed two pleas in bar, 1st. that the plaintiff below was not ready on the first day of January, 1821, to convey the land in the covenant mentioned, according to the terms thereof; 2d. that on the day aforesaid, the plaintiff had not a good and lawful right, in fee simple to said land, nor at the date of said covenant, or commencement of said action. To both these pleas, the plaintiff below filed demurrers, whiich the Court sustained. Weaver sued his writ of error, and here assigns the judgment of the Court below upon said demurrers, as error.

HOPKINS, for the appellant. We contend, that as the defendant in error was bound to make title to us, on the day of the last payment, and that as the covenants were dependent, he must shew that he performed, or was ready to perform his undertaking at that time. Either party must shew his readiness or a tender, when covenants are dependent, in order to recover; and neither could have a cause of action, unless such readiness were shewn, or tender made. At law, time is of the essence of a contract. It has been long established, that a vendee cannot call for title until he pays, if the same day is fixed, both for conveying title and making payment. The reason and analogy are the same in both cases; the rule operating both ways. In Chancery it is sometimes different; where no objections are made, it is sometimes disregarded. The defendant in error should have averred readiness, and a tender also, to comply with his covenant. If the vendee were calling on the vendor for title, it would not be sufficient to aver that he was ready to pay; it would be necessary for him to aver a tender of the money. There is no allegation here, that he was ready and tendered a title on the day; and if it was not made, then the contract was forfeited, for he could not do it afterwards. I have authority to this point. In *Hagner v. The Bank of Columbia*,[a] the doctrine contended for was settled; the offer or tender must be made on the day, and one made at a subsequent time, would not do. In the case at bar, readiness is averred five years after the day had clapsed. The de-

JANUARY 1831

Weaver, Administrator v. Childress.

a 1 Peters' R. 455.

fendant in error does not pretend that an offer was made on the day.

The case of *Christian v. Scott,*[a] may be relied on by the opposite counsel, but it is not similar to the one at bar. That case was correctly determined, and the law well settled; a person in possession must be evicted by action at law. The possession here, was to be delivered on the first of January, 1820, when the first payment was to be made, and the title was to be given on the first of January following, when the last payment was due; these covenants were dependent; neither could require the other to perform without himself performing; and there is no cause of action without the averment of an offer to perform. The plaintiff below has endeavored to recover the two instalments; if he had separated the claims into two counts, the count for the first instalment would have been good; but both are blended into one, which makes it defective, and therefore it cannot be sustained, because it must be taken altogether. Though I do not admit he could recover the first instalment now; he might have done so before he forfeited his contract, after which his right of action was lost. It is now too late; he omitted to pursue his remedy when he had one; but if he had brought suit then, blended as it is now, into one count, he could not have succeeded. If he can recover now, he can recover money on a forfeited contract, and this, from one who could recover from him at the same time; for if the contract be forfeited, the plaintiff in error could recover back any money he had paid. If the first instalment had been paid, and no title made at maturity, the vendee could recover it back, and thus two actions might be binding at the same time.

Weaver, Administrator
v.
Childress.

[a] Mmor's Ala R. 354.

BRANDON, for the appellee. In discussing this subject, several questions of importance arise. The most weighty of which is, what is the proper construction to be put upon the covenant declared on in this cause? On the part of the defendant in error, we contend that the covenants and undertakings set forth in said agreement are independent, and that it was not necessary for the defendant in error, to aver any performance of the covenants on his part as conditions precedent, and this we contend is obvious, from an inspection of the contract itself. The general words of the contract, clearly indicate the intention, that the said Childress retain the disposition of the whole

JANUARY 1831

Weaver, Administrator
v.
Childress.

matter in his hands, until he shall have received pay for it. The expressions are these, that "I, Vaulton Childress, have sold the land, and have agreed to receive $850 for it," clearly shewing, that he kept the whole within himself, and intended to manage the matter in his own way, until he should obtain the pay for the land in question. And to show that Weaver assented to this construction and to this mode of doing business, he subscribed and sealed the contract, without undertaking specifically to do any particular act. He does not say in so many words, that he will pay for the land the $850, but Childress says he will receive it, and Weaver subscribes the contract, thereby assenting to the receipt of it, and by implication, promising to pay. It is true that Childress promises to make title, but it is clearly with this understanding, that he will make the title so soon as the land is paid for by Weaver. This construction of the contract is also strengthened from the position in which the things to be done by either party stand; $425 is to be paid the 1st January, 1820, and then after that, possession is to be given; and $425 more, to be paid on the first January, 1821; and then after that, title is to be made. From the position of these acts to be performed in the said contract, it is clear that Childress and Weaver both intended the whole of the money should be paid, before the title should be made.

To support the foregoing construction, I beg leave to refer to 2 Johnson's Reports, 270; Tennessee Reports, 263, 264; 2 Henry Blackstone's Reports, 390; 1 Lord Raymond, 665; 6 Term Reports, 572-3; Minor's Alabama Reports, 21; 1 Chitty's Pleading.

The money is to be paid in consideration of the bargain and sale, and not in consideration of the deed. But to shew more conclusively that this is an independent contract, and that the making of the title by Childress to Weaver, cannot be considered a condition precedent, it is insisted and maintained by authority, that covenants going to a part of the consideration only, can never be considered dependent; or where the consideration is secured, and any part of it is to be paid, before the act is to be performed by the other party, such covenants or promises cannot be considered as dependent, one upon the other, but are separate and independent undertakings, which may be inforced by either of the parties, without any reference to the other party's rights. To determine this fact, it will only be necessary to refer to the contract declared on.

The first part recites, that he (Childress) sells to Weaver the land described, and agrees to receive for it the sum of $850; $425 of which, is to be paid the first January, 1820, and $425 more, the first January, 1821, and the possession is to be delivered at one time, and the deed to be made at another. The first sum of $425 is to be paid before the said Childress was bound by the contract to make any deed to the said Weaver, and of course, *quoad hoc*, the plea must be ill. If either party intended to make the covenants mutual and dependent, it would have been very easy so to word the contract; but the circumstance of both sealing the contract, and making the acts to be done by each at different times, and disconnected, shows clearly that each of them depended on his remedy, upon the covenants of each to the other; and not upon any resistance which one could make to the recovery of the other upon those covenants.

To sustain the positions last assumed, I beg leave to refer to 6 Bacon's Abridgment, 247, 401; Coke on Littleton, 318; Francis' Maxims in Equity, 41; Powell on Contracts, 259; 1 Term Reports, 645; 6 Term Reports, 668, 57; 7 Term Reports, 130, *Goldsborough v. Orr*; 8 Wheaton, 217; 1 Saunders' Reports, 320, and Notes 3 and 4.

It is alleged in the declaration, that the possession of the land was delivered to the said William W. Weaver, and that he and his heirs have ever since retained the enjoyment and uninterrupted possession of the same, according to our part of the contract; and the plea of Weaver does not even attempt a denial of, or answer to, that allegation. That being a substantial part, not only of the consideration of the agreement, but also a material averment, when made in the declaration, should have been noticed in the plea, otherwise it could not fail to be materially defective. The possession of the premises was of the essence of the contract, and is useful and valuable, and was the main consideration of the contract in this case, for it is so mentioned. It is insisted therefore, that the said Weaver, having received and retained the possession of the land, in the contract mentioned, up to the time of trial, without any offer to surrender up or abandon the same, and having and enjoying the use and occupation, and profits thereof, cannot now plead a failure or want of consideration, or that there is any defect or want of title; and it is laid down as a safe rule, that a person in posses-

JANUARY 1831 sion of land under a purchase, either by deed, or bargain and sale, must be evicted before he can sue for damages, for a breach of covenants.

Weaver, Administrator
v.
Childress.

To sustain these positions, I would refer to Chipman on Contracts 68; 2 Massachusetts' Reports, 432, 464; 2 Johnson's Reports, 571–2; 2 Wheaton, 13; 10 Wheaton, 449; 1 Minor's Alabama Reports, 165; 1 Stewart's Reports, 490; 1 Minor's Alabama Reports, 354.

The plaintiff in error, appears in the cause as the administrator only of William Weaver, and according to well settled principles, can only exercise authority or right, over the personal estate; and cannot, except in certain specified cases, take any notice whatever of the real estate. If William Weaver died before the time Childress was to have made title to the land; there could be no breach of covenant to the administrator. The same covenant and land being cast upon the heir, before the administrator acquired any right, even to the personalty, the heir alone could complain of the breach of a covenant real, or one running with the land. Then, as this plea is pleaded by an admininistrator, I insist that he is bound to shew that the breach, if any, took place in the life time of his intestate, so that the right to damages for the injury, could be vested in him, and not in the heir. But this plea does not shew this fact, and therefore must be ill upon that ground. To sustain this position, see 1 Cook's Tennessee Reports, 459, *Talbot v. Bradford;* 1 Starkie on Evidence, 192, Note (I.)

By the contract made between the parties, Childress was bound to make title to the land spoken of on the 1st day of January, 1821, and not before; but the plea alleges that Childress had no title when the contract was made. That averment was entirely gratuitous, for it was not necessary that Childress should have had the title when the contract was made; it was only necessary that he should be ready to perform when he was bound to perform his contract, which he was hindered from doing by the death of Weaver. We could not take issue upon that plea; it would have required from us the proof of facts, not contemplated in the contract; the plea is therefore defective upon that ground.

*a* 1 Peters' R. 455.

The case of *The Bank of Columbia v. Hagner,* [a] has been relied on by the plaintiff's counsel, and did it really determine the law, as insisted on by him, it might be well for the defendant's counsel to give up the contest. An authority so high, and so respectable, would not be at-

tacked; but I humbly conceive that the counsel is mistaken in his application of the law of that case to the one at bar. There are some very striking differences between the facts in the two cases; only two of which I will mention. The first is, that the correspondence between Hagner and Mason, shows entirely that the one act was to be dependent on the other, and always, after the correspondence approached to any thing like a consummation of the contract, the title seemed to be the thing mostly spoken of by Hagner. Though he took possession partially, he did not take full possession of the premises, and if he had, he abandoned it, and surrendered up the possession, and notified the proper party thereof, before any action brought, so that the contract, while *in fieri*, was rescinded. There are many other features in this case, which shew a difference between it and the one at bar, which might be adduced, but these are deemed sufficient to show that this case should not have the force and effect contended for. In the opinion delivered, the contract is treated as one and entire, not split as the one under consideration.

But to put this matter beyond all doubt, and to shew that the Supreme Court of the United States did not intend an innovation upon the principles which have been settled for the last five hundred years, and which are referred to in the brief, I refer the Court to the case of *Goldsborough v. Orr.*[a] It is there settled, among other things, in accordance with a train of decisions of the wisest Courts, that "whenever acts are contracted, between the parties, to be done at different times, there they are always to be considered independent." The contract sued on in that case, is almost precisely like the one sued on in the case at bar; and the decision there made must be admitted, if that in 1st Peters is to have the effect insisted upon; but in as much as the decision in Wheaton is not referred to or disturbed by the decision in Peters, it is fair to suppose, that the Court did not intend to overrule the doctrine there laid down; both cases being very distinguishable in point of facts, and very reconcileable in point of principles settled. But this doctrine is not *res integra* in this Court. The case of *Christian v. Scott,*[b] has settled this doctrine in relation to the possession of the land, in a way which can never be shaken. It is too well sustained by reason and authority, to afford even a quibble about its effect upon the case at bar. That case is deemed perfectly decisive of this; and therefore the Court will not be longer detained.

[a] 8 Wheaton page 217, & sig.

[b] 1 Stewart's R. 490.

Weaver, Administrator v. Childress.

THORNTON, on the same side. The point urged by plaintiff's counsel as to tender, is untenable. It is determined by this and other Courts, that possession of land is so much a part performance, that when it goes under a contract of sale, a failure of consideration cannot be pleaded in an action for the purchase money, and was well settled in *Christian v. Scott*, just cited. But the question is now on the construction of the covenants. In early times, there were many nice distinctions on covenants, and often injustice was done. At a later period, four rules were established, which embraced all cases, and this comes within one or two of them. The polar star in construing covenants, is the intention of the parties; that is the principle running through the rules referred to, as they are summed up in 1st Saunders, which have never been overruled. Apply them here, and they will shew a tender was not necessary. The character of the covenants shews the same thing; the consideration on both sides is split, unless the possession is not to be regarded as a part consideration. The vendee is to pay at different times; the vendor is to do two acts cotemporaneous with these, giving possession and making title deed. If possession is no part consideration, the case falls under the rule, requiring that where money is to be paid, it must be done before the other party can be called on to perform. But that is not the nature of the contract here, which is fully embraced

*a* Page 320.

by the third rule laid down in 1st Saunders,*a* or to divided considerations. The consideration here is really divided, first by possession, and second by title deed. Possession is a substantive thing; in Tennessee, eight years possession vests the title. The reason of the rule applies here in full force; the record shews possession did go; it is averred in the declaration specially, and is not denied in the pleas.

If we consider it as one covenant, then as money is to be paid before the time of making the deed, it is not a dependent, but an independent covenant, and the whole is

*b* 2 H. Black. R. 390. 6 D. & E. 590, vol 3, page 261. Lib. Ed.

recoverable without any performance.*b* The objection raised, that we have not tendered a deed, is expressly embraced in this rule, as being unnecessary. But the counsel for the plaintiff in error considers that the case in 1st Peters shakes the position we have relied on. It is the only case that seems even by implication, to touch our positions. Only one rule however seems to be impugned, and that I think is not overruled. The Court were equal-

ly divided on one point;[a] and at most, it could only be considered as overruling one principle in Saunders. It does not disturb the rules I contend for, and under which this case comes.

Hopkins, in conclusion. I cannot agree that the question here has been settled by previous decisions of this Court. In *Christian v. Scott*, the deed had been executed, and a party cannot defend himself on a ground which does not afford a cause of action. The case of *Mullins v. Cabiness*, does not touch the quustion here; that case turned upon the construction of the covenant, as to when the services should commence. In the note in 1st Saunders, the author admits that it is almost impossible to lay down principles, on such nicities have the cases been determined; and says, that the intention is to govern. The case in 1st Peters is misapprehended by the opposite counsel; it is similar in all its principles. Our receiving possession does not affect the question, any more than a receipt of a part of the purchase money by the other party, were he sued. Suppose the vendor were sued for not making title, it would be a good defence to shew that though the first payment had been made, yet the other had not, for he was not bound to convey until then. The purchaser, the contract being ended, could recover for money had and received. The first payment and the delivery of possession in this case, were not dependent; it is the last payment, and making of title that are dependent. I dispute the doctrine that possession, while the contract exists, can ripen by possession into a perfect title. His possession is not adverse, until he makes an election to rescind the contract, and not before. He has now an equitable title only.

By JUDGE SAFFOLD. This contest resolves itself entirely into the question, whether the covenants of the parties respectively were dependent, or mutual and independent. For the plaintiff in error, it is argued that Childress, the plaintiff below, was not entitled to recover, without proving that he was ready and able to convey a good title, as averred in his declaration, on the day appointed by the covenant, which facts were denied by the pleas; also, that the declaration is defective, because it contains no averment that Childress offered on the 1st of January, 1821, to convey a good title.

In support of these positions, reference is made to the
47

JANUARY 1831 case of the *Bank of Columbia v. Hagner.*[a]    Much of the reasoning of Justice Thompson, in delivering the opinion of the Court in that case, if taken in the abstract, would tend to sustain the positions for which it was cited. He says, "although many nice distinctions are to be found in the books upon the question, whether the covenants or promises of the respective parties to the contract, are to be considered independent, or dependent; yet it is evident, the inclination of the Courts has strongly favored the latter construction, as being obviously the most just.    The seller ought not to be compelled to part with his property, without receiving the consideration; nor the purchaser to part with his money without an equivalent in return.    Hence in such cases, if either a vendor or vendee wishes to compel the other to fulfil his contract, he must make his part of the agreement precedent, and cannot proceed against the other, without an actual performance of the agreement on his part, or a tender and refusal; and an averment to that effect, is always made in the declaration, upon contracts containing dependent undertakings, and that averment must be supported by proof."

Weaver, Administrator
        v.
Childress.

[a] 1 Peters' R. 465.

To these principles, when applied to truly dependent covenants, I am prepared to yield my ready assent.    The modern rules of decision, appear to have carried the idea of dependent stipulations, as far as established precedent will permit, on the ground that they have been found most safe and just.    Nor would I contest the authority of the further remark contained in the same opinion, that "the time fixed for performance, is at law, deemed of the essence of the contract; and if the seller is not ready and able to perform his part of the agreement on that day, the purchaser may elect to consider the contract at an end." But it is equally true, and so admitted in the same case, that "equity, which from its peculiar jurisdiction, is enabled to examine into the cause of delay in completing a purchase, and to ascertain how far the day named was deemed material by the parties, will in certain cases carry the agreement into execution, although the time appointed was elapsed."    The difference however between the case referred to, and the one under consideration, is so obvious, that the decision in the one, cannot be viewed as an authority for the other.    And most of the remarks quoted, are to be considered as having been made with direct reference to the particular features of that case.    There, the suit was founded on what is called a special agreement.

The material facts of the case cannot be presented in a brief
view. They arose out of a correspondence between Ma-
son, president of the bank, and the defendant, Hagner;
they embraced a period of four years, and were contained
in eleven letters and other documents, relating to the pur-
chase of two lots of ground in the city of Washington,
which the bank proposed selling to the defendant.

The Court said, "it was doubtful if any contract had
ever been concluded between the parties, previous to the
date of the defendant's letter of the 27th April, 1818, to
the president of the bank; for whatever might have been
the right of the bank to have closed the contract, in the
terms of the letter of the 25th April, it was certainly
waived by an acceptance of the modification, contained in
the letter of the 27th April. Nor would any contract
seem to be closed by this letter. It contained two distinct
propositions by the defendant; the one to give his notes
for the purchase money, payable in six quarterly pay-
ments, the first to be made on the 1st of October, then
next, and to take a deed from the bank; the other to bind
himself to pay the money at the times stated, and to take
a bond for a deed, to be given when the whole purchase
money was paid. This necessarily required some further
answer from the plaintiffs, not only to signify their elec-
tion between the propositions, but to do some further act
in confirmation of such election, either to give the deed,
or a bond for the deed." Neither appears ever to have
been done; but in that situation the matter rested for nearly
three years, without any thing being done on the part of
the bank to close the contract, or to intimate that they
considered any contract in force, in relation to the pur-
chase; and that not until the defendant had given them
formal notice, that he considered the agreement at an end.
It is true the defendant had previously accepted possession
of the lots, and occupied them for a time, but relinquished
the possession at or before the time he gave notice of his
abandonment of the contract. This was a considerable
time before the institution of the suit, which was nearly
two years after the time fixed for performance. Nor was
any offer made on the part of the bank to convey, until
the day before the suit was commenced. Even then, the
title offered, was shewn to be defective. Under these
circumstances, the Court observed, that "the possession
taken of the lots by the defendant, could at most, only be
considered as a circumstance from which to infer, that he

considered the contract closed; but could not deprive him of the right of relinquishing it, and restoring the possession, if the plaintiffs were unable to make a title to him, or neglected to do so. The possession was doubtless taken, under a belief that the contract would be performed by the plaintiffs, and a full title conveyed to him; but if the contract was unexecuted, the defendant had a right to disaffirm it, and restore the possession, and would have sustained an action to recover back the purchase money, had it been paid." This imperfect examination of the case referred to, is sufficient to shew an entire dissimilarity between it and the one before us; that, that was founded on undertakings, which in their nature were purely dependent, and consequently, that the reasoning of the Court in that case, must be understood as having direct reference to the facts.

The rules which have been adopted in various decisions, ancient and modern, for distinguishing dependent from independent covenants, are often so nice and technical, that it is difficult to extract from them the true principle of distinction, and ascertain when it is necessary to aver performance in the declaration, and when not. In 1st *a* Page 320, Saunders,[a] it is said, "that covenants, &c. are to be connote 1. strued to be either dependent or independent of each other, according to the intention and meaning of the parties, and the good sense of the case; and technical words should give way to such intention." There, the following rules are recognised: 1st. if a day be appointed for payment of money, or a part of it, or for doing any other act, and the day is to happen, or may happen, before the thing which is the consideration of the money, is to be performed; an *action may be brought* for the money, or *for not doing* such other act, before performance; for it appears that the party relied upon his remedy, and did not intend to make the performance a condition precedent; and so it is where no time is fixed for the performance of that which is the consideration of the money or other act. 2d. Where a day is appointed for the payment of money, &c. and the day is to happen after the thing which is the consideration of the money, &c. is to be performed, no action can be maintained for the money or other thing, before performance. 3d. Where a covenant goes only to part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant. In support of each of these rules, many respectable author-

ities are cited, and satisfactory comment given, and in
illustration of the latter, reference is made to the case of
*Boon v. Eyre*,[a] where A. by deed, conveyed to B. the
equity of redemption of a plantation in the West Indies,
together with the stock of negroes upon it, in consideration
of 500 pounds, and an annuity of 160 pounds for life; and
covenanted that he had a good title to the plantation; was
lawfully possessed of the negroes, and B. should quietly
enjoy. And B. covenanted that A. well and truly per-
forming all and every thing therein contained, on his part
to be performed, he should pay the annuity. The plea
was, that A. was not at the time legally possessed of the
negroes on the plantation, and so had not a good title to
convey. The Court of King's Bench, on demurrer, "held
the plea to be ill, and added that if such a plea were al-
lowed, any one negro not being the property of A. would
bar the action." The decision went on the principle, that
as A. had conveyed the equity of redemption to B. and
so had in part executed his covenant, it would be unrea-
sonable that B. should keep the plantation, and yet refuse
payment, because A. had not a good title to the negroes.
The first and third rules referred to, appear to have a just
application to this case. Here one half of the purchase
money was agreed to be paid one year before the convey-
ance was to have been made; and at the same time the pur-
chaser was to be put in possession of the land; and from
the state of the pleadings, the transfer of the land must
be assumed to have been tendered and accepted, as the
pleas do not deny it.

The terms of the covenant, that the intestate should pay
to Childress, one half of the purchase money, twelve
months before the title of the land was to have been con-
veyed; and, at the same time, the former should receive
possession of the land, is considered as full indication of
the intention of the parties, that their respective covenants
should be mutual and independent, and that each relied on
his legal remedy, in case of a failure by the other. If
they did not, why was the vendor to receive half the con-
sideration long before the title was due? Why was it
agreed that the vendee should have the possession before
the title, and why did he accept it, and continue to retain
it? The presumption is, that the possession, for several
years, was of considerable value, and that the vendee has
had the benefit thereof. But if the vendor was entitled at
any time to his action for part of the purchase money, that

JANUARY 1831circumstance would appear decisive of the principle, that the covenants are, and were intended to be independent; and that he was so entitled after the first instalment became due, this Court entertains no doubt.    To this point it is deemed sufficient to refer to the case of *Adams, et. al. v. Essell, et. al.*[a]    That was an action on a contract for the payment of a sum of money by instalments.    The opinion of the Court, delivered by Judge Trimble, states that on mature reflection, and an examination of authorities, they had become satisfied, that "in assumpsit, in covenant, and special agreements, although the plaintiff must set out in his declaration, the contract as made, he may assign the breaches according to the truth of the case, and shall recover damages for so much of the contract, as at the commencement of the action, was broken, without depriving him of his remedy; or in other words, he can from time to time, recover as much as is due."    And that the contrary doctrine, had grown out of the rigid principles governing the action of debt, and applied only to that particular form of action.    With respect to the effect upon this contract, produced by the act of the vendee in taking and retaining possession of the land, the principles recognised by this Court in the case of *Christian v. Scott,*[b] are entitled to their influence.    It was there ruled, that in an action on a bond for part of the price of a tract of land, if the obligee had delivered the possession to the obligor, and he had retained it, and taken upon himself the ownership, he could not afterwards avoid the payment of the bond, under the plea of fraud in the contract.    But in this case, it is to be observed, that neither the defence of fraud nor other failure of consideration is presented by the pleas, even if such could be available.    The question is simply whether the covenants were in their nature dependent or independent.    If the undertakings of the respective parties were mutual and independent, the averment in the declaration of the vendor's ability and readiness to convey, can only be regarded as surplusage, producing no injury.[c]    In the case of *Lee v. Fowler,*[d] the plaintiff had covenanted to build a house for the defendant, and to furnish it on or before a fixed day, in consideration of a certain sum of money, part of which the defendant covenanted to pay at an earlier day, and the residue when the house was finished.    The Court decided, on demurrer, that the completion of the house was not a condition precedent, but that the covenants were mutual and independent; that the

Weaver, Administrator
v.
Childress.

[a] 1 Bibb 149.

[b] Minor's Ala. Rep. 354.

[c] Mullins v. Cabiness, Minor's Ala. R. 21.

[d] 2 John. R. 272.

plaintiff's right of action for part of the purchase money accrued, before he was under any obligation to have been in a situation to make an averment of performance, and that though the time had elapsed before the commencement of the suit, the plaintiff might maintain his action for the entire consideration money, without averring performance, and notwithstanding the building had not been finished at the time appointed.[a]

The consequence of deciding the covenants under consideration, to have been dependent, would be to declare a recision of the contract. By which means the vendee's represetatives would be left in possession of the land, with the profits arising therefrom for the term of eleven years, which would probably be equal in value, to the larger portion of the purchase money, and this without price paid or payable; at least those are the inferences arising on the record. Hence, a majority of the Court are of opinion, that the judgment below must be affirmed.

JUDGE CRENSHAW, dissented from the opinion of the Court.

Judgment affirmed.

JUDGE PERRY, not sitting.

*[margin note:]* JANUARY 1831

Weaver, Administrator
v.
Childress.

[a] Thorpe v. Thorpe, 12 Mod. 461, Terry and v. Dantze, 2 H. Black, 389.