### James Saunders *v.* Joseph W. Carroll et al.

It is a sound rule of construction never to consider laws as applicable to cases which arose previous to their passage, unless the Legislature have in express terms declared such to be their intention.

The Act of the Legislature declaring, that debts shall bear interest at the rate of five per cent. per annum from the time they become due, unless otherwise stipulated, is not applicable to debts which were contracted and became due before the passage of that law.

APPEAL from the Fourth District Court of New Orleans. Tried by Jury. *Price*, J. *Simonds & Fenner*, for plaintiff and appellant. *Singleton & Clack* and *Elmore & King*, for defendant.

Spofford, J. The only question now at issue is, whether the defendants, acceptors of a bill of exchange, are liable to the plaintiff for any interest thereupon after maturity and prior to judicial demand.

*Crutcher & McRaven* of Vicksburg, Mississippi, being indebted to *James Saunders* of Lynchburg, Virginia, on the 15th of March, 1851, drew their bill upon *Buchanan, Carroll & Co.* of New Orleans, at eight months after date, to the order of *James Saunders*, for $2991 48, and afterwards put the drawees in funds to meet the same at maturity.

The bill was drawn in duplicate upon one piece of paper and thus remitted by letter to the drawees, with instructions to accept it and remit it to the payee (the plaintiff *Saunders*) at Lynchburg, Virginia. With these instructions the acceptors complied immediately and literally, and requested *Saunders* to acknowledge the receipt to *Crutcher & McRaven*. It would also seem, from evidence offered by the plaintiff, that the acceptors advised their constituents, *Crutcher & McRaven*, that they had complied with instructions, by forwarding the accepted bill.

It appears that the plaintiff, nearly five years after the maturity of this bill, found it in an old box of papers in his house at Lynchburg. Meanwhile, he had done nothing in relation to it, and it would seem that, until a short time previous to this search among the papers in his house he was unaware of its existence, although he had been in business relations with *Crutcher & McRaven* all the time, and had claims upon them for an unliquidated balance.

The explanation of this singular occurrence, so far as it is to be gathered from the record is, that at the time of the arrival of *Buchanan, Carroll & Co's* letter containing the bills, and for many weeks afterwards, the plaintiff was absent from Lynchburg on public business; that his son, who managed at least some part of his business and took his letters from the post office, received and opened the letter of *Buchanan, Carroll & Co;* that he put the bill away among the papers where it was finally found; that before the return of his father he was killed; and thus, that no communication was had between the father and son relative to the matter.

The ground upon which the plaintiff seems mainly to rely to charge the defendants with interest from the maturity of the paper, although no demand was made, is, that the demand was rendered impossible by the negligence of the acceptors in forwarding the first and second of exchange upon one paper and in one letter to Lynchburg, instead of retaining the duplicate.

100

The duty of *Buchanan, Carroll & Co.* was to obey the directions of *Crutcher & McRaven*, who were their only principals in this matter. This they seem to have done. No intimation was given them, that they were expected to retain the duplicate. On the contrary, the two bills were remitted to them as one instrument unsevered, with instructions to remit *it* to *Saunders*. And if they would have been justified in severing the paper, it does not appear that the plaintiff has suffered at all from their neglect to do so. If they had retained the duplicate and forwarded it within a short time by a succeeding mail, it would, in all likelihood, have shared the same fate with the original. At any rate, the plaintiff received both ; and it appears, that he sent both in one envelope (for they are still unsevered) to his agents in New Orleans, for the purpose of making this demand, thereby committing the same error of judgment, if error it be, in his own affairs, which he charges upon the defendants.

His tardy recovery of the instrument is not attributable to a fault of the defendants ; the evidence shows, that it is directly attributable to his own loose mode of conducting his business, his neglect of proper directions as to the disposition of his letters and bills receivable in his absence from home, and his failure to keep proper accounts and a business correspondence with his debtors, *Crutcher & McRaven*. The bill was negotiable in form, and the acceptors had no ground to suppose that it was still in the hands of the payee ; or, that he had failed to receive it. It was not their duty to institute a search for it, but they had a right to await its presentation at their counting room by the holder, whoever he might be.

Interest was not due from the maturity of the bill, there being no stipulation to that effect, and no putting in default shown.

But it is contended, that interest is recoverable from the passage of the Act of 9th March, 1852 ; Sess. Acts, 95.) " All debts shall bear interest at the rate of five per cent. per annum from the time they become due, unless otherwise stipulated."

The debt was contracted and had become due before the passage of that law. If it were competent for the Legislature to annex a new condition to the contract of the parties, we should be bound to presume that they did not intend to do so, unless their language could bear no other interpretation. Retroactive laws, and laws affecting contracts already made, are so repugnant to logic and natural justice, that it cannot readily be supposed that the lawgiver intended to pass them ; see C. C., Art. 8. It has repeatedly been held in this court to be a sound rule of construction, never to consider laws as applicable to cases which arose previous to their passage, unless the Legislature have, in express terms, declared such to be their intention. See cases cited in Hennen's Digest, p. 829, No. 4. *Succession of Taylor*, 10 An., 511. And in general, the courts both of England and America strive so to interpret statutes as to give them a prospective operation only. See *Moon* v. *Durden*, 2 Exchequer R. 22. In *Baily* v. *the Mayor*, &c., 7 Hill, 146, it was held, on this principle, that a statute authorizing interest to be taxed upon verdicts did not apply to verdicts rendered before the Act was passed, although the language of the Act was broad enough to embrace them. See also *Plumb* v. *Sawyer*, 21 Conn. 351.

And so we think that by the Act of March 9th, 1852, the Legislature did not intend to supply any new ingredient in existing contracts. They only provided, that in all contracts thereafter made, and debts thereafter created, it

was to be implied, that interest at five per cent. should be due by the obligor after maturity, unless otherwise stipulated. In the case of *Barnes* v. *Crandell*, 12 An. 112, we held, that interest cannot be claimed on a judgment which does not bear interest on its face, and which was rendered when no general law was in force by which interest was superadded to it.

The agreement as to interest was one of the tacit clauses in the contract of these acceptors. To find out what they agreed upon in that regard, we must have recourse to the laws in force at the date of the contract. Article 1940, No. 1 of the Civil Code declares, " that no general or special legislative Act can be so construed as to avoid or *modify* a legal contract previously made." C. C. Art. 8.

"Pour *suppléer les clauses* non exprimées dans un contrat, il est clair qu'on ne peut se reporter qu'à la loi qui existait au jour où il a été passé. Dans ce cas, en effet, c'est l'intention des parties qu'il s'agit de rechercher ; or, ce n'est pas à une loi qui n'existait pas encore que la pensée de ces parties s'est reportée pour régler ce qu'elles laissaient inexpliqué dans leur acte. Compléter cet acte par les règles de la loi nouvelle, ce serait donc la faire rétroagir." 1 Marcadé, No. 53.

Finally, it was contended, that interest is due from the inception of a suit previously commenced upon this cause of action, but in which a nonsuit was taken by the plaintiff. It suffices to say, that prior to the institution of that suit the defendants had tendered payment of all that we find to have been due upon the bill, which was refused unless the interest wrongfully demanded were paid also.

Judgment affirmed.