HANNAH M. WILSON, executrix &c.,

*v.*

MARY ANN COBB and others, executors &c.

Where an account extending over a number of years was ordered, and the rate of interest during that time had been changed by law,—*Held*, that the interest payable on the accounting must conform to such fluctuations.

Wilson *v.* Cobb.

Question of rate of interest

*Mr. A. Q. Keasbey*, for complainant.

*Mr. T. N. McCarter*, for defendants.

THE CHANCELLOR.

By the judgment of the court of errors and appeals (*2 Stew. 361*), the defendants are to be required to account for half of the proceeds of the sale (subject to a certain deduction) of certain railroad bonds, with interest from June 21st, 1864, and the question is as to the rate of inter-

NOTE.—Generally, equity follows the law in allowing or refusing interest. *Heydle* v. *Hazlehurst. 4 Bibb 19 ; McMillen* v. *Scott, 1 Mon. 150 ; Crocker* v. *Clements, 23 Ala. 296 ; Hughes* v. *Standeford, 3 Dana 286 ; Lair* v. *Jelf, 3 Dana 181 ; Hunt* v. *Smith, 3 Rich. Eq. 465 ; Chambers* v. *Wright, 52 Ala. 444 ; Pujol* v. *McKinley. 42 Cal. 559 ; Beeson* v. *Elliott. 1 Del. Ch. 368 ; Hammond* v. *Hammond, 2 Bland 370 ; Coatsworth* v. *Barr, 11 Mich. 199.*

Bearing in mind that, where there is no *contract*, interest is always regulated by the *lex fori* (*Goddard* v. *Foster, 17 Wall. 123*), the following cases show under what circumstances interest fluctuates with statutory changes enacted after the time when the right thereto had originated or accrued :

In *Walker* v. *Penry, 2 Vern. 42,* interest on a mortgage made in 1650 was payable at the legal rate of eight per cent. By an act of 1660 the rate was reduced to six. The mortgagee entered in 1675.—*Held,* that the extra two per cent. paid between 1660 and 1675 could not be allowed as payments on account of the principal, but the mortgagee was entitled to only six per cent. from the date of his entry. See, however, *S. C., 2 Vern. 145 ; Hedworth* v. *Primate. Hardres 318 ; Bodley* v. *Bellamy, 1 W. Bl. 268 ; N. Y. Life Ins. Co.* v. *Manning. 3 Sandf. Ch. 58 ; Samyn* v. *Phillips, 15 Ohio St. 218 ; Mueller* v. *McGregor, 28 Ohio St. 265.*

In *Proctor* v. *Cooper, Prec. in Ch. 116,* on a bill to redeem a mortgage made in 1641,—*Held,* that complainant must pay eight per cent. until 1660, and after that six.

In *Miller* v. *Burroughs, 4 Johns. Ch. 436,* on a mortgage drawing six per cent., default was made in paying interest after the rate had been raised to seven.—*Held,* on foreclosure, that the interest, up to the time of entering the decree, must be calculated at six per cent. Also, *Aldrich* v. *Sharp, 4 Scam. 261 ; Wernwag* v. *Brown, 3 Blackf. 457 ; Wilson* v. *Marsh, 2 Beas. 289 ; Whitcher* v. *Webb, 44 Cal. 127 ; Van Beuren* v. *Van Gaasbeck, 4 Cow. 496 ; Wiswell* v. *Baxter, 20 Wis. 680 ; Morgan* v. *Evans, 3 Cl. & Fin. 160 ; Gordon* v. *Phelps, 7 J. J. Marsh. 619.* But see *Bullock* v. *Boyd, Hoffm. 294 ; Cromwell* v. *County of Sac, 96 U. S. 51.*

In *Astley* v. *Powis, 1 Ves. 483,* on a decree rendered in 1694, it was held that the subsequent arrears of interest, although on articles draw-

Wilson *v.* Cobb.

est. The judgment was pronounced in March term, 1878. The lawful rate of interest then was seven per cent. per annum, but it was changed to six by a law which took effect on the 4th of July following. A contract for the payment of money made before the 4th of July, 1878, on which interest at the rate of seven per cent. per annum was lawfully payable by its terms, would still bear interest at that rate until the money be paid, or until judgment or decree, notwithstanding the change in the lawful rate, and even though the contract matured before the change took effect. A judgment or decree entered upon it since that change would, however, bear interest only at the legal rate, six per cent. *Wilson* v. *Marsh, 2 Beas. 289; Verree* v. *Hughes, 6 Hal. 89;*

ing six per cent., should be according to the legal rate at that time—five per cent.

In *Hawkins* v. *Ridenhour, 13 Mo. 125,* a note bearing ten per cent. interest was made in 1839. In a suit thereon in 1849,—*Held,* that a statute of 1846, providing that no more than six per cent. could be added to any judgment thereafter recovered, applied.

In *Eastin* v. *Vandorn, Walk. (Miss.) 214,* a statute of 1822, increasing the rate of interest from six to eight per cent., was deemed not to apply to a judgment recovered in 1806. See *Taylor* v. *Knox, 5 Dana 466.*

In *White* v. *Lyons, 42 Cal. 279,* an attorney as such received certain moneys of the plaintiff and converted them to his own use in 1863, when the rate was ten per cent. By an act of 1868 the rate was reduced to seven. On a judgment recovered in 1871.—*Held,* that plaintiff was entitled to interest on the amount so converted, at the rate of ten per cent. until 1868, and after that time at the rate of seven. Also, *Randolph* v. *Bayne, 44 Cal. 366; Rootes* v. *Stone, 2 Leigh 650.*

In *Stark* v. *Olney, 3 Oreg. 88,* defendant conveyed lands in February, 1854, to plaintiff, with full covenants of warranty. Plaintiff was evicted in 1863. In May, 1854, the rate of interest was changed from six to ten per cent.—*Held,* that the proper measure of damages was to compute interest at six per cent. up to May, 1854, and at ten per cent. thenceforward.

In *Klingensmith* v. *Reed, 31 Ind. 389,* a note was given in 1866, when the rate was six per cent., stipulating for the payment of ten per cent. Afterwards the latter rate was established by a general statute.—*Held,* that the payee could recover ten per cent.

In *Macon* v. *Trustees &c., 7 Ga. 204,* a judgment drawing seven per cent. interest, the legal rate at the time of its recovery, was held not to draw eight per cent., the rate established at the time of its revival by *scire facias.* See *Mower* v. *Kipp, 6 Paige 88; Mann* v. *Taylor, 1 McCord 171; Allen* v. *Adams, 15 Vt. 16; Fries* v. *Watson, 5 S. & R. 220; Lewes* v. *Morgan, 3 Y. & J. 394.*

In *Aguirre* v. *Packard, 14 Cal. 171,* on a suit against an administrator for goods sold his intestate, the last item being dated September 12th,

*Cox* v. *Marlatt, 7 Vr. 389.* Where interest is given by way of damages for the detention of a debt, it will be allowed according to the legal rate for the time being; and if there have been changes, it will vary from time to time during the period for which interest is allowed, according to the changes. *Matter of Marcy's Account, 9 C. E. Gr. 451.* In this case, then, interest will be allowed at six per cent. from June 21st, 1864, to March 15th, 1866, at which date the legal rate, which, before that, was six per cent., became seven (*P. L. 1866 p. 406*); and at seven, from that time to July 4th, 1878, and at six thereafter. The decree will bear interest at six per cent.

---

1848, and the claim presented July 24th, 1858.—*Held*, that an allowance of interest at six per cent. for a year and a half, and at ten per cent. (the new rate) thereafter, was erroneous.

In *Dougherty* v. *Henarie, 47 Cal. 9*, interest was allowed on a street assessment made after the passage of the act of 1868, allowing interest in such cases, notwithstanding the contract for the work had been awarded prior to 1868.

In *Bailey* v. *New York, 7 Hill 146*, a statute passed in 1844, giving interest on verdicts, was held not to include those theretofore recovered. Also, *Cooper* v. *North, 1 How. Pr. 59; Bull* v. *Ketchum, 2 Den. 188.*

In *Lillard* v. *Field, 1 J. J. Marsh. 275*, a statute of 1798 declared that all usurious contracts should be void. By the act of 1819 only the alleged excess was made void.—*Held*, in an action on a note given in 1825, that it constituted no defence that such note was given to consummate an usurious parol agreement made in 1818, because since 1819 an usurious note given before that time might be enforced for the principal and legal interest.

In *Lowell* v. *Johnson, 14 Me. 240*, the latter clause of a section, that if usury be taken on "any bond &c., *made* for the payment of money lent," was held to be so far qualified by the first clause of the same section, "if * * * * upon any contract *hereafter* made &c.," that a note made before such act went into effect would not be included.

In *Story* v. *Kimbrough, 33 Ga. 21*, the defendant, in February, 1856, borrowed of the plaintiff $12,000 on his note, due in December, 1856, with interest from date, and gave him also another note due at the same time, for twelve and a half per cent. usury. At maturity these notes were renewed, or rather, *continued*, for one year. By the act of 1845, in force when the loan was originally made, the whole of the interest reserved was forfeited. By the act of 1856 (approved March 3d, 1856), only the usurious excess on contracts thereafter made was void.—*Held*, that the renewals constituted a new contract, which must be governed by the act of 1856. See *Meeker* v. *Hill, 23 Conn. 574.*

In *Matthias* v. *Cook, 31 Ill. 83*, by an act of 1849, the legal rate of interest on money loaned was ten per cent. By an act of 1857 parties

Wilson *v.* Cobb.

were allowed to stipulate for any rate not exceeding ten per cent., and all prior usury laws were repealed. In a suit on a note given in 1856, reserving above ten per cent.,—*Held*, that such suit must be controlled by the act of 1849.

In *Rathburn* v. *Wheeler, 29 Ind. 601*, a note, usurious on its face, was given in 1861, and afterwards usurious payments made thereon in 1865 and 1866. Suit was brought thereon after the act of 1867 had gone into operation.—*Held*, that the usury paid in 1865 and 1866 might be inquired into, and if it exceeded ten per cent. (the maximum rate fixed by the act of 1867) the excess might be recouped, notwithstanding an act of 1865 which forbade the recovery of usury voluntarily paid. See *Redman* v. *Deputy, 26 Ind. 338 ; Bowen* v. *Phillips, 55 Ind. 226.*

In *McDowell* v. *Maultsby, Phill. Eq. 16*, a bill of discovery was filed in equity to aid a plea of usury in a suit at law. The defendant demurred to the bill because the discovery would expose him to a forfeiture of the bond which secured the alleged usury, and also to a penalty of double the amount loaned.—*Held*, that the demurrer was good, notwithstanding the enactment of a statute (pending the bill), which took away both the forfeiture and the penalty.

In *Mitchell* v. *Doggett, 1 Fla. 356*, a note was given in 1839, reserving usury. By the act of 1833, then in force, all usury was void and the giver forever exonerated from paying it. By an act of 1844 that part of the act of 1833 was repealed. In a suit on the note brought in 1846,—*Held*, that the repealer of 1844 did not estop the maker of the note to set up the usury.

In *Root* v. *Pinney, 11 Wis. 84*, at the time an usurious mortgage was given, it was, by statute, valid for the amount of the principal loaned, and also for the usury reserved, unless the defendant, when sued, tendered the principal. Afterwards the act, so far as such tender was concerned, was repealed, and in a suit thereon defendant set up usury without a tender.—*Held*, that the plaintiff could only recover the principal, since, by the repeal, the defendant was exempted from averring or proving a tender.

In *Mann's Case, 1 McCord 589*, a verdict was obtained in 1810 for a certain sum, with interest from 1808, but no judgment thereon was actually entered. In 1815 an act was passed allowing interest on all judgments for debts that bore interest. In 1820, on motion to enter judgment *nunc pro tunc*,—*Held*, that only the interest from 1808 to 1810 could be added to the execution. See *Clemens* v. *Judson, Minor 395.*

In *Coles* v. *Kelsey, 13 Tex. 75*, a statute giving eight per cent. interest on all judgments, was held to include a contract bearing five per cent., and made before the act was passed. See *Pauska* v. *Daus, 31 Tex: 67 ; McCormick* v. *Bush, 47 Tex. 191.*

In *Lewis* v. *Arnold, 13 Gratt. 454*, a statute authorizing a jury to add interest to any verdict thereafter rendered, was construed to include a verdict in an action of tort then depending. See *Hepburn* v. *Dundas, 13 Gratt. 219.*

In *Wills* v. *Dunn, 5 Gratt. 384*, a bill was filed in 1819 against an administrator for an accounting between the years 1785 and 1801. In May, 1797, a statute was passed, increasing the rate of interest from five to six per cent.—*Held*, that an allowance of six per cent. from 1785 to the time of entering the decree, was erroneous.

In *Fosdick* v. *Van Husan, 21 Mich. 567*, a tender of more than was due on a mortgage was made and refused, and the mortgagor filed a bill to redeem.—*Held*, that the mortgagee could not be permitted to com-

Wilson *v.* Cobb.

pound the interest thereon, claiming his right to do so under a statute passed after the bill to redeem had been filed.

In *Jenness* v. *Cutler*, *12 Kan. 500*, an usurious note was given at a time when, by statute, all the usury reserved was, in a suit on such note, forfeited. That statute was afterwards repealed and another passed, allowing twelve per cent. to be collected on such notes.—*Held*, in a suit on the note, that the prior statute must govern. See *Seegar* v. *Seegar*, *19 Ill. 121*.

In *Newton* v. *Wilson*, *31 Ark. 484*, the constitution provided that "no law limiting the rate of interest for which an individual may contract in this state shall ever be passed."—*Held*, that a note, with interest at two and a half per cent. a month, made while this was in force, was not affected by subsequent constitutional and statutory changes repealing such provision.

In *Hubbard* v. *Callahan*, *42 Conn. 524*, an act of 1872 provided that where there was no agreement for a different rate, the interest should be six per cent., but that it should be lawful to contract for any rate of interest. In September, 1872, the plaintiff loaned the defendant five hundred dollars, and took his note, payable one year after date, "with interest at the rate of fifteen per cent. after maturity." Before the note became due the act of 1873 was passed, providing that "no greater rate of interest than seven per cent. per annum shall be recovered or allowed for the time after the money loaned becomes due."—*Held*, that the fifteen per cent. was to be regarded as interest, and not as damages or a penalty; and that if the act of 1873 was intended to apply to such contracts, it was unconstitutional and void. See *Saunders* v. *Carroll*, *12 La. Ann. 793*.

In *Troxwell* v. *Fugate*, *Hard. (Ky.) 2*, a statute of 1799, authorizing the clerk of the court to calculate and add interest on verdicts, was held not to apply to a verdict on a bill given in 1798. Also, *Russell* v. *Shepherd*, *Id. 44*.

In *Avery* v. *Bowman*, *40 N. H. 453*, a statute which authorized the collection of interest on executions, and went into effect March 1st, 1843, was held to apply to an execution issued February 27th, 1843.

In *Scott* v. *Trent*, *4 Hen. & Munf. 356*, an act authorizing appellate courts to award ten per cent. damages, in satisfaction of all interest and damages from the time of rendering the decree below, passed in January, 1804, was held not to include a decree rendered May 1st, 1803. Also, *Beatty* v. *Smith*, *2 Hen. & Munf. 395*.

In *Hazen* v. *Union Bank*, *1 Sneed 115*, a grant in a charter passed in 1835, allowing a bank to receive seven per cent., was not affected by a constitutional provision adopted in 1834, authorizing the legislature to fix a uniform rate throughout the state, and a law passed in 1835, establishing six per cent. as such rate. *Aliter*, as to such a charter subsequently granted. *McKinney* v. *Memphis Co.*, *12 Heisk. 104*. See, also, *Bandel* v. *Isaac*, *13 Md. 202*; *Dill* v. *Ellicott*, *Taney C. C. 233*.

In *Goggans* v. *Turnipseed*, *1 Rich. (N. S.) 80*, a statute, providing that interest at seven per cent. should be allowed on all open accounts then existing, interest on such accounts not being then allowed in South Carolina,—*Held*, to be unconstitutional.

In *Myers* v. *Park*, *8 Heisk. 550*, a statute enacted in 1875, imposing interest on delinquent taxpayers for taxes assessed in 1874, was held valid. See *Bartruff* v. *Reney*, *15 Iowa 257*; *Ryan* v. *State*, *5 Neb. 276*.

In *Roberts* v. *Cocke*, *28 Gratt. 207*, an act empowering jurors to remit interest on claims contracted during the Rebellion, was held to be

unconstitutional. See, also, *Cecil* v. *Deyerle, Id. 775; Kent* v. *Kent, Id. 840.*

In *Seary* v. *Moors, 103 Mass. 317,* by a statute of 1867, all usury laws were repealed; providing, however, that such act should not affect any existing contract, or action pending, or existing right of action. Under a contract made in 1866, a debtor paid usurious interest in 1868.—*Held,* that he could not recover three-fold the sum paid, although he might have done so prior to 1867, by virtue of the usury laws then in force, and notwithstanding the saving clause in the act of 1867. See *De Merville* v. *Le Blanc, 12 La. Ann. 221.*

In *Mechanics Sav. Bank* v. *Allen, 28 Conn. 97,* an act validating certain previous loans, partly usurious, was held to be constitutional.

In *Andrews* v. *Russell, 7 Blackf. 474,* an act declaring that usurious contracts should not be void, was, on the ground of relieving from a penalty, construed to embrace those made before as well as after its passage. See, also, *Cooley's Const. Lim. (4th ed.) *376; Justice* v. *Charles, 1 Ind. 32; Reed* v. *Coale, 4 Ind. 283; White Water Co.* v. *Vallette, 21 How. 414; Baugher* v. *Nelson, 9 Gill 299; Perrin* v. *Lyman, 32 Ind. 16; Thomas* v. *Watson, Taney C. C. 297; Shockley* v. *Shockley, 20 Ind. 108.*

In *Farr* v. *Chandler, 51 N. H. 545,* a general revision of the statutes of New Hampshire changed the usury laws, by repealing the act allowing a recovery of three times the illegal interest paid, with a general saving clause, however, that no repeal should affect any act done or any right accruing or accrued, &c., before the time when such repeal took effect, was held not to deprive a borrower of the right to such deduction on a note made before the repealer went into effect.

In *Williar* v. *Baltimore Ass'n, 45 Md. 546,* an act was passed in 1876, providing that usury should not be set up in any case where the obligation &c. had been redeemed or settled by the parties. An usurious mortgage was settled in September, 1875, and in October, 1875, the obligor brought suit under the then existing law, to recover the usurious excess. The act of 1876, *supra,* was approved while the suit was pending.—*Held,* that the borrower's right of action was vested and could not be suspended or destroyed by the act of 1876.

In *Dunbar* v. *Wood, 6 Vt. 653,* by the act of 1797, merely the usury was avoided and a penalty also given. By an act passed in 1822, containing a general saving clause, the whole instrument was rendered void. A note was given in 1821 and renewed by another in 1824.—*Held,* in an action on the latter, that the law of 1797 must control. See *Folsom* v. *Blake, 3 Edw. Ch. 442; Cowry* v. *Lewis, 19 Ind. 121.*

In *Peirson* v. *Smith, Clarke's Ch. 228,* notes were executed and matured in 1836, but were not prosecuted until November, 1837.—*Held,* that the borrower could avail himself of usury under the act of May, 1837, and call upon the plaintiff as a witness to prove the usury. Also, *Post* v. *Boardman, Id. 523, 530.*

In *Howland* v. *Marr, 20 Wis. 275,* the law of 1859 authorized the reservation of twelve per cent., that of 1860 ten per cent.—*Held,* that a note given after 1860 for interest accrued before 1860, and reserving twelve per cent., was valid.

In *Myrick* v. *Battle, 5 Fla. 345,* a note was given March 14th, 1844, payable one day after date. On March 15th, 1844, the rate of interest was reduced from eight to six per cent.—*Held,* that the note bore eight per cent. until the recovery of judgment, and the judgment thereon six per cent.

In *Lee* v. *Davis, 1 A. K. Marsh. 397,* a note was given September 13th,

Wilson *v.* Cobb.

1797, payable twelve months after date. When given the rate was five per cent., but before it became due the rate was changed to six per cent.—*Held*, that only five per cent. was recoverable.

In *Bryan* v. *Moore, Minor 377*, a bond was given January 1st, 1817, payable January 1st, 1820. By an an act passed in February, 1818, the rate was reduced from eight to six per cent.—*Held*, that until judgment the bond bore eight per cent.

In *Leslie* v. *Leslie, Ll. & G. temp. Sugd. 1*, it was held that a rule of court fixing the rate of interest, applied to a legacy given by a will drawn before the rule was adopted.

In *Henderson* v. *Laurens, 2 Desauss. 170*, a legacy was given to a granddaughter, payable to her on attaining twenty-one, or on her marriage, with interest at five per cent.—*Held*, that she was entitled to interest at five per cent., to be calculated until the time when she attained twenty-one, and afterward at seven per cent., the legal rate. See *Galliard* ads. *Ball, 1 N. & McC. 76*.

In *Thornton* v. *Fitzhugh, 4 Leigh 209*, it was held that, on a bequest of an annuity made in 1791, when the rate was five per cent., although such annuity fall in arrear after the interest was increased to six per cent., such arrear would only carry five per cent.

In *Dunne* v. *Mastick, 5 Cal. 244*, a testator died in 1869, at which time interest on legacies was not by statute recoverable. The code of California, allowing interest in such cases, went into effect in 1873.—*Held*, that the legatees could thereunder recover interest on their legacies from the executor, from the time (1872) when he ought to have paid them. See *Dilworth* v. *Sinderling, 1 Binn. 488; Findley* v. *Smith, 7 Serg. & R. 264*.

In *North Bridgewater Bank* v. *Copeland, 7 Allen 139*, a statute providing that usury between the payee and maker of a note should not be a defence in an action by an endorsee for value, without notice, was held not to include notes in existence at the time of its enactment. See *Gwynn* v. *Lee, 1 Md. Ch. 445*.

In *Hannum* v. *Bank of Tennessee, 1 Coldw. 398*, a provision that "no bank shall pay interest or other compensation, in consideration of deposits," was held not to invalidate an agreement to pay interest made before the time of its passage, nor to prevent the subsequent payment of interest on previous deposits, so long as they remained in the bank.

In *Brandon* v. *Green, 7 Humph. 130*, an act authorizing a bill to be filed in chancery to obtain relief where a defendant sued at law on an usurious contract failed to plead or prove the usury, was construed to embrace a judgment obtained before its passage. See *Greenfield* v. *Frierson, 7 Heisk. 633; Campbell* v. *Morrison, 7 Paige 157; Skinner* v. *Christmas, Clarke's Ch. 268*.

In *Magwood* v. *Duggan, 1 Hill (S. C.) 182*, an act of 1777 declaring that all usurious contracts should be utterly void was so far repealed by an act of 1830·as to allow the lender to recover the principal without interest or costs.—*Held*, that a lender could· not make such recovery on a note given before 1830. Also, *Morton* v. *Rutherford, 18 Wis. 298; Springfield Bank* v. *Merrick, 14 Mass. 322; Nicholls* v. *Gee, 30 Ark. 135; Pond* v. *Horner, 65 N. C. 84; Drake* v. *Latham, 50 Ill. 270; Sparks* v. *Clapper, 30 Ind. 204*.

In *Hunter* v. *Hatch, 45 Ill. 178*, a statutory provision that all usurious payments should be considered as principal *pro tanto*, was held to be a vested right, and irrepealable by a subsequent·statute.

Dime Savings Inst. of Plainfield *v.* Mulford.

An agreement between the parties to a contract which is due, to increase the rate of interest from six to seven per cent., the latter being the present legal rate, is valid. *Conover* v. *Van Mater, 3 C. E. Gr. 481; Smith* v. *Graham, 34 Mich. 302 ; Burchard* v. *Frazer, 23 Mich. 224.* See *Gardner* v. *Emerson, 40 Ill. 296 ; Bassett* v. *McDonel, 13 Wis. 444.*

See, also, an excellent article on the retroactive effect of statutes abolishing usury laws, contained in *8 Cent. L. J. 430,* and which had escaped notice until after the preparation of the above note.—Rep.